A. W. THERRIEN CO., INC.,
Plaintiff-Appellee,

v.

The H. K. FERGUSON COMPANY,
Defendant-Appellant.

No. 72–1196.

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1972.

Decided Dec. 21, 1972.

William D. Ginn, Cleveland, Ohio, with whom Ronald L. Snow, Orr & Reno, Concord, N. H., Alan R. Lepene, and Thompson, Hine & Flory, Cleveland, Ohio, were on brief, for appellant.

Philip G. Peters, with whom Wadleigh, Starr, Peters, Dunn & Kohls, Manchester, N. H., was on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This appeal involves a contract dispute between a general contractor, The H. K. Ferguson Company, and a roofing subcontractor, A. W. Therrien Co., Inc. These parties entered into a contract on January 14, 1969, in which Therrien agreed to install built-up roofing, roof insulation, and associated sheet metal work on seven buildings that Ferguson

was constructing in the Anheuser-Busch brewing complex in Merrimack, New Hampshire. The initial contract price was $264,916.00.

Therrien started work on this project in February 1969. During construction a number of purchase orders were issued. Some of these expanded the scope of the work, while others were to repair damage to the roofing caused by other trades. Therrien was fully paid for these orders which brought the total contract price to $357,562.00.

In December 1970 Therrien filed this suit in state court seeking, *inter alia*, recovery for the balance due on the original contract price. Ferguson removed the case to the district court on diversity grounds and filed a counterclaim alleging defective performance.[1] After trial without a jury, the district court found that Ferguson had accepted the roofing in question and awarded Therrien the balance due on the contract, $53,634.33. The court also found, however, that Therrien had violated contract specifications in installing the roofing. Rather than award Ferguson damages for this defective performance, however, the court, relying on the one year guarantees in the contract, limited Ferguson's recovery on its counterclaim to $28,478.60, the sum Ferguson had spent repairing defective portions of the roof during this guarantee period. From this limitation on its damages and from the award in favor of Therrien, Ferguson appeals.

The resolution of this appeal turns first upon what standard of performance Therrien was obligated to render under its agreement with Ferguson, and second upon whether Therrien's installation of this roofing constituted substantial performance. With respect to the first issue, we find that the parties contemplated the installation of a twenty year bondable roofing system when they entered into this agreement. While the contract documents are not explicit on this point, they do contain a number of references which indicate that a roofing system of this standard of quality was anticipated.[2] Of greater significance, however, is the testimony of project manager Marshall Patch, Ferguson experts Edward Murphy and C. E. Baker, *and* Therrien president, Gerard A. Therrien, all of whom agreed that this contract called for the construction of this type of roofing. While the trial court was correct in observing that the only guarantees which Therrien made on its workmanship were for a one year period, these guarantees may not be construed to deprive Ferguson of its right to recover damages for Therrien's failure to install roofing of the quality called for by the contract specifications. In addition, on brief and at oral argument Therrien made much of the failure of either Ferguson or Anheuser-Busch to obtain a twenty year surety bond covering the roofing and flashings. Again we do not see how the failure to purchase this bond may be read to relieve Therrien of its duty to perform its contract. We thus conclude that this action must be remanded for a redetermination of Ferguson's damages.

1. For the sake of simplicity, Ferguson chose to limit its claim for damages at trial to one roof, the ten acre one Therrien installed on the Beer Packaging and Shipping Building.

2. Technical Provisions, Section 20, specified that "Johns-Manville, or approved equal . . . insulation, bondable to 20 years" was to be used in constructing built-up roofing. Flashings at parapets, curbs, and roof edges were to be built in compliance with "asbestile system FE–4 of Johns-Manville . . . bondable to 20 years." (During construction the parties substituted flashing system FE–1 for this specification, but this system also carries a 20 year endorsement.) Section 20 also required Therrien to arrange inspections by manufacturers' representatives to insure that "the materials used are approved . . . and are installed according to these and the material manufacturers' specifications for 20 year construction roofs." Finally, this section also reserved the right in the owner, Anheuser-Busch, to obtain "a 20 year surety bond covering roofing and flashings."

Turning now to the question of the adequacy of Therrien's performance, from our review of the record we note that Therrien violated contract specifications in at least two major respects during the installation of this roofing. The court found and the evidence in the record amply demonstrates that Therrien's installation of the wall flashings deviated from the specifications in the following respects: "the base sheet was put under the cant strip rather than over it; the cant strip was not properly adhered to the transitop parapet walls; flashing material was not mopped and applied correctly; and [Therrien] did not install metal cap flashings underneath the metal coping on the parapet walls as it was required to do." Similar deficiencies were found in the flashings around curbs and vents in the roof.

With regard to the installation of the built-up roofing, Technical Provisions, Section 62, specified that Lexsuco cold cement was to be applied "in such quantity that adhesive will spread full width across the ribs when insulation is embedded." As explained by Ferguson's expert Baker, this specification required Therrien to use a double measure of Lexsuco over the entire roof in order to insure that the base layer of insulation board would adhere to the steel deck. Photographs introduced into evidence demonstrate that this specification was not followed and that Lexsuco was applied in a haphazard manner and in insufficient quantities. The testimony of Ferguson's architect Johnson established

that the inadequate application of this cement in large part caused the ruptures which appeared in the roof membrane during the 1970–71 winter season which Ferguson was required to repair.

■ On this evidence the court concluded "that the Lexsuco was probably not applied in sufficient quantity and according to strict specifications on that section of the roof which has been repaired," but it refused to find that the cold cement "was improperly applied over the entire roof." This limited finding was error since, in so finding, the court improperly placed the burden of establishing the inadequacy of Therrien's performance on Ferguson. Once the question of the sufficiency of a subcontractor's performance is in issue, the burden is on the subcontractor to prove substantial performance. *See, e. g.*, Superior Trailer Mfg. Corp. v. J. W. Scatterday, Inc., 241 Ind. 459, 169 N.E.2d 721, 722 (1960); George v. Goldman, 333 Mass. 496, 131 N.E.2d 772, 773 (1956); Divito v. Uto, 253 Mass. 239, 243, 148 N.E. 456 (1925).

■■ In light of this error and the evidence summarized above, we find that the issue of whether Therrien's performance was sufficient to be considered substantial must be remanded for redetermination. Considering the nature and extent of this project and the complex role Ferguson was playing in coordinating the work of approximately fifty specialty trade contractors at sixteen different construction sites, we do not find that Ferguson's apparent acceptance [3] of

---

3. The court based its finding that Ferguson had accepted the roofing in part upon the fact that on June 18, 1970, about one month after Therrien had completed its work, Ferguson sent Therrien release of lien forms which, had Therrien signed them, allegedly would have entitled it to the balance due on the contract. Acceptance was also based upon Ferguson's payment of two Therrien purchase orders in September and October 1970, and upon an alleged absence of compaints about the roof until November of that year. The second two grounds for the court's finding are contrary to the proof. With regard to the payments of the purchase

orders, paragraph 11 of the subcontract provides in part that "[n]o payments made prior to acceptance of the work shall be construed to be an acceptance of the work in whole or in part." As to complaints, Rick Haven, a Ferguson inspector, testified that during construction he complained to Gerard Therrien about abutting insulation board over flutes (depressions) rather than ribs on the steel deck, habitual overheating of asphalts used to mop the roofing felts, insufficient asphalt between plies of roofing felt, and the presence of water within the membrane of the roof.

Therrien's performance automatically entitled Therrien to the balance due on the contract price. · The award in favor of Therrien is vacated.[4]

One final matter remains. On January 25, 1972, six days after the conclusion of the trial, large areas of the Beer Packaging and Shipping Building roof blew off in a storm. Ferguson filed a motion to reopen the evidence based upon this incident which was denied. The denial of this motion was error. This incident constituted a classic example of newly discovered evidence which is relevant to the issues of Therrien's performance and Ferguson's damages. As such, if evidence based upon this incident is offered on remand, it should be received.

The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

4. In addition, we note in passing, considering the evidence summarized above as well as the testimony of roofing experts Murphy and Therrien that a bond could not be obtained on the Beer Packaging and Shipping Building roof, that we seriously question the trial court's conclusion that "there was no competent evidence proving that the roof was, in fact, not bondable."