**Ramon Saul SANCHEZ, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 743, Docket 83–6356.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1984.

Decided Jan. 5, 1984.

**30**

Richard Ware Levitt, New York City (Rudin & Levitt, New York City, on the brief), for appellant.

Paul Shechtman, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Michael L. Tabak, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and MacMAHON, District Judge.*

PER CURIAM:

Ramon Saul Sanchez appeals from the December 23, 1983, order of the District Court for the Southern District of New York (David N. Edelstein, Judge) refusing to terminate a commitment for civil contempt. Because Judge Edelstein's brief explanation for his ruling creates uncertainty as to whether the standards enunciated in *Simkin v. United States,* 715 F.2d 34 (2d Cir.1983), have been properly applied, we remand the matter for further consideration.

Sanchez was subpoenaed before a grand jury in the Southern District investigating crimes allegedly committed by a Cuban exile group known as "Omega 7." He refused to testify on grounds of self-incrimination, received a grant of use immunity, and

thereafter persisted in his refusal to testify. He was adjudged in civil contempt by Judge Edelstein on October 22, 1982, and ordered confined until he testified, but no later than the term of the grand jury, which ends on March 24, 1984. A year later, on October 26, 1983, Sanchez began a hunger strike, apparently reacting to Judge Carter's denial of motions to end the civil contempt confinement of three other persons who had refused to testify before the same grand jury. Responding to that action, the Government obtained from Judge Sand an order permitting officials of the Metropolitan Correctional Center to force-feed Sanchez. The next day, counsel for Sanchez filed a motion asking Judge Edelstein to end his confinement on the ground that the civil contempt sanction had lost its coercive impact and become punitive. The District Judge heard oral argument on the motion presented by counsel. At the hearing the Judge indicated that he would not hear testimony from Sanchez, nor from Sanchez's wife or his Florida attorney. However, the Judge agreed to consider any affidavit submitted as an offer of proof. Counsel submitted an affidavit indicating that Sanchez would testify to his resolute unwillingness to testify and that his Florida attorney would provide some background support for Sanchez's position. On December 2, Judge Edelstein denied the motion to end the confinement. The Court's order is set forth in the margin.[1]

■ The District endeavored to apply this Court's recent opinion in *Simkin v.*

---

* The Honorable Lloyd F. MacMahon of the United States District Court for the Southern District of New York, sitting by designation.

1. Whereas Ramon Sanchez, who was placed in coercive incarceration pursuant to this court's order of October 21, 1982 for civil contempt for refusing to testify before a grand jury, has applied for an order vacating the order of October 21, 198[2]; and

Whereas this court must release a contemnor if coercive confinement becomes punitive, but should not make such a finding unless the movant demonstrates that "unusual circumstances" exist that justify rejecting Congress' decision that an 18 month period is coercive, *Simkin v. United States,* 715 F.2d 34, 37 (2d Cir. 1983); and

Whereas this court heard oral argument on November 21, 1983 with respect to Mr. Sanchez' application and carefully considered Sanchez' counsel's offer of proof as to what his witness would testify; and

Whereas Sanchez has not met his burden of showing that "no realistic possibility" of purging contempt exists by ad[d]ucing more than "contemnor's avowed intention never to testify" or any circumstances not directly in his control that would prevent him from changing his mind and testifying, *Id.,*

It Is Hereby Ordered That Sanchez's application for an order releasing him from civil contempt is denied in all respects.

*United States, supra,* articulating a requirement of "conscientious consideration of the circumstances pertinent to the individual contemnor." *Id.* at 37. In two respects, however, it appears that Judge Edelstein may have read *Simkin* too strictly. First, he stated that a court "should not" make a finding that a civil contempt confinement has become punitive "unless the movant demonstrates that 'unusual circumstances' exist that justify rejecting Congress' decision that an 18 month period is coercive, *Simkin v. United States,* 715 F.2d 34, 37 (2d Cir.1983)." The District Court's citation to *Simkin* concerned that portion of the opinion dealing with a *constitutional* challenge to a continuation of confinement. We noted our agreement with the Third Circuit, *In re Grand Jury Investigation (Braun),* 600 F.2d 420, 427 (3d Cir.1979), that "in the absence of unusual circumstances, a reviewing court should be reluctant to conclude, *as a matter of due process,* that a civil contempt sanction has lost its coercive impact at some point prior to the eighteen-month period prescribed as a maximum by Congress." (Emphasis added). 715 F.2d at 37. However, the next sentence of our opinion contrasted the constitutional standard with the discretionary standard to be applied by district courts:

> There remains, nevertheless, a broad discretion in the district courts to determine that a civil contempt sanction has lost its coercive effect upon a particular contemnor at some point short of eighteen months.

715 F.2d at 37. We did not instruct the district courts that they "should not" find a civil contempt sanction to have become punitive unless the movant persuaded them to reject the maximum confinement period prescribed by Congress. Congress specified the maximum period that may be found to be coercive; whether the confinement of any particular contemnor has ceased to be coercive at some point within that maximum period requires no showing of grounds for disagreeing with Congress, but only grounds for finding that no realistic possibility exists that the contemnor might yet testify if confinement is continued.

 Second, Judge Edelstein concluded that "Sanchez has not met his burden of showing that 'no realistic possibility' of purging contempt exists by ad[d]ucing more than 'contemnor's avowed intention never to testify' or any circumstances not directly ·in his control that would prevent him from changing his mind and testifying [citing *Simkin*]." *Simkin* does not require a contemnor to produce more than his avowed intention never to testify. The passage referred to by Judge Edelstein simply makes clear that a judge "need not, of course, accept as conclusive a contemnor's avowed intention never to testify." *Id.* at 37. That a judge need not accept such an avowal does not mean that he may not. And the contemnor is not required to prove circumstances that would prevent him from changing his mind. As we acknowledged in *Simkin,* the district judge is called upon to make a difficult decision, necessarily involving some prediction concerning the possibilities of the contemnor's future behavior. *Id.* at 38. Whether or not the contemnor has presented more than his avowal never to testify or circumstances that would prevent him from changing his mind, the District Judge must determine, as best he can, whether the contemnor has persuaded him that continued confinement holds no realistic possibility of producing a willingness to testify. Though Judge Edelstein may have undertaken this task and simply not been persuaded by Sanchez's showing, the possibility that an excessively strict burden of proof was imposed persuades us to return the matter to the District Court for further consideration consistent with this opinion.[2]

---

2. We intend to create no special requirements of proof either for a finding that the contempt sanction should continue or that it should be terminated. The issue is whether the contemnor has persuaded the district judge that there is no realistic possibility that continued confinement might cause the contemnor to testify. The contemnor's avowal not to testify may be found persuasive or unpersuasive. No objective facts are required to be presented to support a determination either way.

We consider singularly unpersuasive the Government's suggestion to the District Court that Sanchez has indicated some weakness in his resolve by failing physically to resist forced feeding or to remove the feeding tube from his body. A civil contemnor need not risk the use of physical force upon his person nor risk incurring self-inflicted injury in order to demonstrate that continued confinement will not alter his determination not to testify.

There is no merit to Sanchez's procedural claim. The District Judge, having observed Sanchez at the time of his contempt adjudication and reviewed his subsequent papers, was not required to hear further testimony from him in person. *Simkin v. United States, supra,* 715 F.2d at 38 n. 2. Nor did the appellant's offer of proof concerning expected testimony from himself and an attorney require the Court to hear oral testimony. The offer of proof was devoid of any significant factual information.

Remanded.