In re Anthony R. MARTIN–TRIGONA.

In re NEW HAVEN RADIO, INC.

Misc. Civ. No. H–83–62.

United States District Court, D. Connecticut.

May 25, 1984.

John R. Williams, New Haven, Conn., M. Hatcher Norris, Glastonbury, Conn., Thomas G. Dennis, Federal Public Defender, Hartford, Conn., for Anthony R. Martin-Trigona.

Richard Coan, Coan, Lewendon & Royston, New Haven, Conn., for Richard Belford, Trustee in Bankruptcy of estate of Anthony R. Martin-Trigona.

Irving Perlmutter, Ullman, Perlmutter & Sklaver, New Haven, Conn., for Daniel Meister, trustee in Bankruptcy of New Haven Radio, Inc.

Paul Taylor, New York City, for New Haven Radio Inc.

RULING ON "MOTION FOR HEARING TO DETERMINE WHETHER IMPOSITION OF CIVIL CONTEMPT HAS LOST ITS COERCIVE EFFECT AND FOR RELEASE OF DEBTOR," AND ORDER

JOSÉ A. CABRANES, District Judge.

This motion is the latest chapter in litigation involving Anthony R. Martin-Trigona,

a familiar figure in the courts of this country. Familiarity with the court's previous published decisions, *In re Martin-Trigona,* 573 F.Supp. 1245 (D.Conn.1983) (Memorandum of Decision), and *In re Martin-Trigona,* 573 F.Supp. 1237 (D.Conn.1983) (Ruling on Motion to Recuse), is assumed.

On May 15, 1984, Attorney John R. Williams, court-appointed co-counsel to Anthony R. Martin-Trigona with respect to aspects of this litigation that expose Mr. Martin-Trigona to the risk of incarceration, filed on Mr. Martin-Trigona's behalf a "Motion for Hearing to Determine Whether Imposition of Civil Contempt Has Lost Its Coercive Effect and for Release of Debtor." Mr. Martin-Trigona was originally held in civil contempt on January 3, 1984, and has been incarcerated since March 27, 1984, pursuant to an order of this court,[1] for his refusal to comply with an order of the court to answer questions at an examination of the debtor pursuant to Rule 2004 of the Bankruptcy Rules, after having been granted use immunity for his testimony.

This court's order of incarceration repeatedly has been affirmed by the Court of Appeals. *See e.g., In re Anthony R. Martin-Trigona,* 732 F.2d 170 (2d Cir.1984); *In re Anthony R. Martin-Trigona, In re New Haven Radio, Inc.,* No. 84–5018 (2d Cir. Apr. 25, 1984) (unpublished decision).

The motion filed May 15, 1984 by Attorney Williams transmitted to the court various representations and assertions by Mr. Martin-Trigona. Among them are that Mr. Martin-Trigona "has repeatedly avowed his intention never to testify so long as this matter remains pending before [Judge Cabranes]";[2] that Mr. Martin-Trigona "has previously been incarcerated in connection with this matter on civil contempt orders and has been incarcerated in total, in connection with all such incarcerations, for a total of several months"; that "[i]t is apparent that incarceration under orders of civil contempt has no coercive effect upon Mr. Martin-Trigona"; that Mr. Martin-Trigona "has instructed counsel ... to advise

---

**1.** Mr. Martin-Trigona was first held in civil contempt of court on January 3, 1984, for failing to obey an order of the court to testify after he had been granted use immunity for his testimony, *see* Certified Official Transcript of Hearing of January 3, 1984 (filed Jan. 4, 1984) at 69–70, 77–78, 83–85, and he was ordered incarcerated until he was prepared to answer the questions which he had refused to answer. *Id.* at 96. The Court of Appeals stayed the order of incarceration pending an expedited appeal, *see In re Anthony R. Martin-Trigona,* No. 84–5003 (2d Cir. Jan. 4, 1984) (order), and, in a published opinion of March 14, 1984, ultimately affirmed the order of this court and vacated the stay. *In re Anthony R. Martin-Trigona,* 732 F.2d 170, 176 (2d Cir.1984).

After Attorney Williams informed the court on March 19, 1984 that Mr. Martin-Trigona had agreed to testify in compliance with the court's order, as affirmed by the Court of Appeals, *see* Certified Official Transcript of March 19, 1984 (filed Mar. 20, 1984) at 3, the court scheduled a hearing to be held on March 20, 1984, to test the *bona fides* of Mr. Martin-Trigona's representations that he wished to purge the finding of civil contempt. At a continuation of that hearing on March 27, 1984, Mr. Martin-Trigona once again refused to testify in response to an order of the court, was found in civil contempt, and was again ordered incarcerated. *See* Certified Official Transcript of Hearing of March 27, 1984 (filed Mar. 30, 1984) at 94–95, 112–113, 144–147. In affirming the order of incarceration, the

Court of Appeals later characterized the grounds on which Mr. Martin-Trigona had refused to testify as "meritless" and "intended to delay the Rule 2004 examination and harass the Trustee." *In re Anthony R. Martin-Trigona, In re New Haven Radio, Inc.,* No. 84–5018 (2d Cir. Apr. 25, 1984) (unpublished decision).

**2.** It is obvious that by asserting a present intention not to testify while this matter remains pending before me, Mr. Martin-Trigona seeks to accomplish what his many repetitive recusal and disqualification motions did not—namely, the transfer of this litigation to another judge. *See In re Martin-Trigona,* 573 F.Supp. 1237 (D.Conn.1983) (Ruling on Motion to Recuse); *In re Anthony R. Martin-Trigona, In re New Haven Radio, Inc.,* Misc.Civ.H 83–62 (D.Conn. Apr. 25, 1984) (Ruling on Yet Another Motion to Release Defendant or to Recuse), *In re Anthony R. Martin-Trigona, In re New Haven Radio, Inc.,* No. 84–5018 (2d Cir. Apr. 25, 1984) (unpublished decision) ("Appellant's past attempts to avoid testifying concerning his assets, and his previous history of *ad hominem* attacks on judges, indicate that his 'acts of contempt are palpably aggravated by a personal attack upon the judge in order to drive the judge out of the case for ulterior reasons.' *Cooke v. United States,* 267 U.S. 517, 539 [45 S.Ct. 390, 396, 69 L.Ed. 767] (1925). The claim of bias is clearly intended to further delay the Rule 2004 examination and harass the Trustee. '[Such a] scheme should not be permitted to succeed.' *Id.*").

the Court that he will never testify so long as this matter remains pending before Judge Cabranes, whether or not he is incarcerated as a result"; [3] that "[b]ecause incarceration has lost its coercive effect, further incarceration for civil contempt is not appropriate and is not lawful"; and that "[i]f the Court considers that additional incarceration is necessary to vindicate the authority of the Court, it has criminal remedies available to it under appropriate circumstances."

## A.

Our Court of Appeals has held that district courts have broad discretion to determine that a civil contempt sanction has lost its coercive effect upon a contemnor, but that district courts have an obligation to make individualized assessments of the coercive effects of continued confinement upon particular contemnors. *Simkin v. United States*, 715 F.2d 34, 37 n. 1, 39 (2d Cir.1983); *see also Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir.1981); *In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 427 (3d Cir.1979).

■ A district judge has "virtually unreviewable" discretion as to the procedure to be used in determining whether a civil contempt sanction has lost any realistic possibility of having a coercive effect, *Simkin v. United States, supra*, 715 F.2d at 38, and there is no requirement that testimony be taken from the contemnor. *Sanchez v. United States*, 725 F.2d 29, 32 (2d Cir. 1984); *Simkin v. United States, supra*, 715 F.2d at 38. Mr. Martin-Trigona undoubtedly knows how to bring to the court's attention in documentary form—subject, of course, to the specific restrictions concerning service and filing which have been imposed on him by various orders of this court—any information which might persuade the court that the civil contempt sanction has lost its coercive effect, *see, e.g., Sanchez v. United States, supra*, 725 F.2d at 31; *Simkin v. United States, supra*, 715 F.2d at 37; *In re Dohrn*, 560 F.Supp. 179, 180 (S.D.N.Y.1983).

Furthermore, the complete record of this extraordinary litigation reveals that one of Mr. Martin-Trigona's favorite and most effective ways of delaying the orderly administration of the two bankruptcy estates and of harassing the court-appointed trustees, their counsel, and other interested parties and their counsel, has been to take actions which arguably require hearings—including filing motions, repeated offers to testify, and frivolous appeals of clearly interlocutory orders—so that his real or imagined adversaries are put to the expense and effort of briefing issues and attending countless hearings or arguments scheduled in the normal course by courts acting in good faith to administer justice. The effect of all this massive shuffling of paper, files, and persons is simply to delay still further any satisfaction of the claims of Mr. Martin-Trigona's creditors.

It is also true that the court has had ample opportunity to observe Mr. Martin-Trigona at the time of the contempt adjudication and throughout these prolonged proceedings. *See Sanchez v. United States, supra*, 725 F.2d at 33.

On this record, and in the exercise of its discretion, the court declines to hold an evidentiary hearing to take testimony from Mr. Martin-Trigona on the question of the coerciveness of his continued confinement. Accordingly, that part of the motion which requests an evidentiary hearing to determine whether Mr. Martin-Trigona's continuing confinement still serves coercive effect is denied.

## B.

The court now turns to the question whether, under all the circumstances which obtain here, the representations in support of the motion for release of debtor which are contained in the motion constitute a sufficient showing by the contemnor that there is no realistic possibility that his continued confinement will have a coercive ef-

---

**3.** *See* note 2, *supra.*

fect upon him. *Simkin v. United States, supra,* 715 F.2d at 39.

■ At the outset, it should be noted that the burden is on the contemnor to persuade the court that there exists no realistic possibility that continued confinement might cause the contemnor to testify. *Id.* at 37. While there are no specific requirements of proof, and no objective facts are required to be presented to support a determination either way by the district court, *Sanchez v. United States, supra,* 725 F.2d at 31 n. 2, "[t]he judge need not ... accept as conclusive a contemnor's avowed intention never to testify." *Simkin v. United States, supra,* 715 F.2d at 37. As Judge Goettel put it,

> a contemnor's self-serving statement that he or she will not cooperate should not, by itself, be considered by courts in determining whether to impose or continue to enforce an order of civil contempt. If it were, very few persons could ever be compelled to testify or cooperate. *See United States v. Dien,* 598 F.2d 743, 745 (2d Cir.1979).

*In re Dohrn, supra,* 560 F.Supp. at 180. In the *Dien* case, the contemnor claimed that since his refusal to answer questions was based on fear of reprisal against himself and his family, incarceration would not alter his decision and was thus punitive rather than coercive. The Court of Appeals well noted that

> [s]uch an argument if sustained would only benefit those who persistently refuse to cooperate despite immunity orders and would emasculate section 1826. *In re Grand Jury Proceedings (United States v. Marshall),* 532 F.2d 410, 412 (5th Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976). *Whether Dien will change his mind depends upon future events which we cannot at this time determine.*

*United States v. Dien,* 598 F.2d 743, 745 (2d Cir.1979) (*per curiam*) (emphasis supplied).

■ Although this court is no more clairvoyant than was the Court of Appeals in *Dien,* it is mindful of its obligation to make an individualized determination. *Simkin v. United States, supra,* 715 F.2d at 37 n. 1 and 39. Having considered the totality of circumstances which obtain here as well as all of the representations which have been made to the court, including those made by Mr. Martin-Trigona in the motion filed by Attorney Williams, on this record the court is not persuaded that continued confinement will not induce Mr. Martin-Trigona to testify.

Indeed, quite recently, on two separate occasions, Mr. Martin-Trigona represented to the court through Attorney Williams that he wished to purge the finding of civil contempt and agreed to testify, although he ultimately changed his mind both times. *See* Agreement to Testify and Request for Stay (filed Mar. 21, 1984); Certified Official Transcript of Proceedings of March 19, 1984 (filed Mar. 20, 1984) at 3; Agreement to Testify and Request for Hearing (filed May 7, 1984). On other occasions, it was represented to the court that Mr. Martin-Trigona would testify if he received a grant of immunity, *see* Certified Official Transcript of Hearing of July 1, 1983 (filed Aug. 9, 1983) at 43–44 ("Mr. Norris: If he has a grant of immunity he understands his obligations and he will comply with his obligations."), and if the court's order were affirmed by the Court of Appeals (as it has been repeatedly), *see* Certified Official Transcript of Hearing of January 3, 1984 (filed Jan. 4, 1984) at 98. Thus, all that can be said is that the record reflects a degree of uncertainty on Mr. Martin-Trigona's part as to whether he will testify, and that his asserted present resolve not to testify may be less firm than he would now have the court believe.

Despite Mr. Martin-Trigona's history of recalcitrance, the court believes that there is a possibility that continued confinement will have the desired effect of inducing him to testify; nothing in the record to date suggests that his continued coercive imprisonment would in any sense violate his right to due process of law. *See In re Grand Jury Investigation (Braun), supra,* 600 F.2d at 428. Nor does Mr. Martin-Trigo-

na's silence during the almost two months in which he has been held in coercive imprisonment—far less than anything that, in the context of this litigation, might be regarded as "punitive," *see, e.g., id.* at 423–424 & n. 11, 427–428, and cases cited therein—necessarily mean that future confinement will not have the desired effect of obtaining Mr. Martin-Trigona's testimony. As Judge Adams has observed,

> incarceration of intransigent witnesses for civil contempt is premised on the notion that the desire for freedom and concomitantly the willingness to testify, increases with the time spent in prison.

*Id.* at 428.

Lastly, this is not a case where the information sought by the court's order to testify is not needed or is already available from other sources or by other means. If it were, there would have been no need to grant Mr. Martin-Trigona use immunity in return for his testimony.

For these reasons, and considering all of the circumstances of this case, with which the court has been well acquainted since early 1983, this court cannot say that the continued incarceration of Mr. Martin-Trigona no longer has coercive effect.

Accordingly, as much of the motion as seeks release of the contemnor because the incarceration "has lost its coercive effect" and has become "punitive" is denied.

## C.

Because the court has determined that the continued incarceration of Anthony R. Martin-Trigona continues to serve a coercive function, it is appropriate to clarify the procedure to be followed when Mr. Martin-Trigona eventually decides to purge himself of civil contempt. While ordinarily the court would endeavor, at the request of counsel, to schedule a hearing at which the contemnor could purge himself of contempt, the long and tortuous history of these and related proceedings reveals that Mr. Martin-Trigona's many bad faith acts[4] have already succeeded in wasting much of the court's time and effort and have put the trustees, their counsel, and other interested parties and their counsel to much needless effort and expense.

Recently, for example, after the court was informed by Attorney Williams on March 19, 1984 that Mr. Martin-Trigona wished to purge himself of civil contempt, this court scheduled a hearing for March 20, 1984 to test the *bona fides* of Mr. Martin-Trigona's representations. *See* Certified Official Transcript of Hearing of March 19, 1984 (filed Mar. 20, 1984) at 3. The record of the March 20, 1984 hearing suggests that the veracity and completeness of Mr. Martin-Trigona's answers under oath to questions put to him at that hearing are open to serious doubt. Compare, for example, his answer to the first question put to him by counsel for the trustee with his answer to that same question put to him again by the court approximately twenty minutes later:

1.

BY MR. ROYSTON:

Q. Mr. Martin-Trigona, for the last five years have you used any name besides the name that you stated to the Court previously?

\*      \*      \*

THE WITNESS: Yes.

A. To the best of my recollection—

THE COURT: I remind you, Mr. Martin-Trigona, not only that you are under oath, but I remind you that your failure to answer these questions will lead to a

---

**4.** Many of these acts have been documented *in extenso* by this and other courts and need not be rehearsed once again. *See generally In re Anthony R. Martin-Trigona, In re New Haven Radio, Inc.,* No. 84–5018 (2d Cir. Apr. 25, 1984) (unpublished decision rejecting charges of prejudice by judge and commenting on personal attacks by litigant attempting to disqualify judge); *In re Martin-Trigona,* 573 F.Supp. 1245 (D.Conn.1983) (detailing history of litigant's harassing, vexatious, abusive, and frivolous litigation against public officials, judges, and lawyers), and cases cited therein; Certified Official Transcript of Hearing of January 3, 1984 (filed Jan. 4, 1984) at 19–25; Certified Official Transcript of Hearing of March 20, 1984 (filed Mar. 25, 1984) at 3 *et seq.*

finding of contempt and will lead to your incarceration until you are, in fact, prepared to answer these questions fully.

Answer the question.

A  I'll try to make some notes.

Philip Bond.  Alan Peterson.  Roger Preston.  Anthony Martin.  Martin Trigona—which is to say without a hyphen. James Arthur.  Michael Jones.  Peter Rogers.  Alan James.  George Phillips. James Bond.

There may be others, but that's pretty complete.

### 2.

THE COURT: You understand, Mr. Martin-Trigona, that you remain under oath?

THE WITNESS: Yes.

BY THE COURT:

Q  Mr. Martin-Trigona, you indicated earlier a number of names that you had used in the last five years.  Would you be good enough to tell me again what those names were?

A  Yes.  Anthony Martin-Trigona.  Martin Trigona.  Robert Martin.  James Bond.  George Phillips.  Peter—Peter Arthur.  John—John—I forget—John. And Martin Trigona, without a hyphen.

Q  Is that all?

A  Excuse me, your Honor?

Q  Is that all?  Is that the full list?

A  No, I don't believe it is, your Honor.

Q  Why not?  Has your recollection become faulty with respect to the names you've used during this period?

A  No, your honor.

*See* Certified Official Transcript of Hearing of March 20, 1984 (filed Mar. 26, 1984) at 43–44, 58.

Moreover, at a continued hearing on March 27, 1984 to test the *bona fides* of Mr. Martin-Trigona's representation that he wished to testify fully in order to purge himself of the finding of civil contempt, after the denial of two meritless motions to recuse (among the most recent in a long string of similar unsuccessful motions filed by Mr. Martin-Trigona himself and various

counsel, including Mr. Williams and Mr. Paul Taylor), Mr. Martin-Trigona once again refused to testify, *see* Certified Official Transcript of Hearing of March 27, 1984 (filed Mar. 30, 1984) at 94–95, 145, on grounds that the Court of Appeals later rejected as "meritless" and "intended to delay the Rule 2004 examination and harass the Trustee." *In re Anthony R. Martin-Trigona, In re New Haven Radio, Inc.,* No. 84–5018 (2d Cir. Apr. 25, 1984) (unpublished decision).

The court has been careful to ensure that Mr. Martin-Trigona would have ample notice of the subjects to be inquired into at the Rule 2004 examination, although Mr. Martin-Trigona arguably is not entitled to any such notice.  Pursuant to orders of this court, counsel for both Trustees have filed, on more than one occasion, statements of the subjects to be inquired into at the Rule 2004 examination.  Some are very specific, and one is in the form of interrogatories.  *See, e.g.,* Statement [by Daniel Meister, Trustee] of Material to be Subject of Rule 2004 Proceeding (filed Dec. 22, 1983);  Statement by Richard Belford, Trustee, of Subjects to be Pursued at the Rule 2004 Examination (filed Dec. 27, 1983); Proposed Questions to be Propounded to Anthony R. Martin-Trigona at Continued Rule 2004 Examination (filed Mar. 27, 1984); Proposed Areas of Inquiry in Examination of Debtor Pursuant to Bankruptcy Rule 2004 (filed Mar. 27, 1984).

Since Mr. Martin-Trigona's erratic behavior has given the court reason not to rely on representations that he will testify fully and truthfully, the court will proceed in the following manner:

(1) To any future applications which request the court to schedule a hearing so that Mr. Martin-Trigona can purge the finding of civil contempt by testifying in accordance with the repeated orders of this court and the Court of Appeals, there shall be attached: (a) a written statement by Mr. Martin-Trigona that he wishes to purge himself of the finding of contempt of court by testifying fully and truthfully to all questions put to him by counsel for the

Trustees, if such questions are determined by the court to be proper; (b) a written statement consisting of a set of answers by Mr. Martin-Trigona to the Proposed Questions to be Propounded to Anthony R. Martin-Trigona at Continued Rule 2004 Examination (filed Mar. 27, 1984); and (c) a written statement supplying the information sought by the Proposed Areas of Inquiry in Examination of Debtor Pursuant to Bankruptcy Rule 2004 (filed Mar. 27, 1984).

(2) The three written statements described in paragraph 1(a), 1(b), and 1(c), *supra,* shall be signed at the end by Mr. Martin-Trigona and shall include certifications by a person empowered to administer oaths in the state of Connecticut that the written statements have been subscribed to and sworn or affirmed to be true in his or her presence by Mr. Martin-Trigona, under penalty of perjury.

(3) The court will evaluate such attachments to determine the good faith *vel non* of Mr. Martin-Trigona's representations that he wishes to testify fully and truthfully in order to purge the finding of contempt of court.

(4) Absent such attachments and certifications, or other adequate showing of good faith efforts to submit to the Rule 2004 examination, any application to schedule a hearing for the purpose of permitting Mr. Martin-Trigona to purge himself of civil contempt shall be subject to summary denial.

(5) At any hearing held by the court after compliance with these requirements and a determination by this court that there has been a sufficient demonstration of a good-faith desire to purge the finding of con-

tempt by testifying fully and truthfully, the court will continue the dates by which Mr. Martin-Trigona will file with the court the affidavits, lists and exhibits concerning his assets which the court ordered him to file at the hearings of March 20, 1984 and March 27, 1984. *See* Certified Official Transcript of Hearing of March 20, 1984 (filed Mar. 26, 1984) at 59–60, 63–65, 78–85; Certified Official Transcript of Hearing of March 27, 1984 (filed Mar. 30, 1984) at 16, 123–130.

(6) Mr. Martin-Trigona and his counsel are hereby reminded that the affidavits, lists, and exhibits referred to in paragraph (5), *supra,* shall be the subjects of a continued hearing, along with any other matters that adversary counsel have noted or which are relevant in a Rule 2004 examination.

### D.

Much confusion has been generated in these proceedings by the proliferation of filings purporting to be motions, applications, or notices of one sort or another, many of them repetitive or clearly inappropriate in the circumstances. Further confusion has resulted from Mr. Martin-Trigona's efforts *pro se,* combined with his representation in some (but not all) matters by one or another court-appointed or privately-retained counsel. To avoid any confusion with respect to Mr. Martin-Trigona's incarceration and proceedings which may be scheduled in the future with respect thereto, the court reminds all concerned that Mr. Martin-Trigona is represented by counsel with respect to the question of his incarceration and the related contempt findings.[5]

5. The court has appointed no less than three counsel (Messrs. Williams, Norris, and Dennis) to serve as counsel for Mr. Martin-Trigona in connection with one or another aspect of the proceedings which arguably entail a risk of incarceration, despite the fact that Mr. Martin-Trigona has repeatedly refused to disclose information sufficient to establish indigency, a showing of which is arguably necessary to justify such appointments. Other matters relating to his incarceration have been the subject of representation at the Court of Appeals by a fourth lawyer, Mr. Paul Taylor. On March 27, 1984, Mr. Williams declined an appointment by the court to represent Mr. Martin-Trigona in his recent appeal of this court's order of incarceration, *see* Certified Official Transcript of Hearing of March 27, 1984 (filed Mar. 30, 1984) at 96–97, but he apparently continues his representation of Mr. Martin-Trigona with respect to other matters relating to Mr. Martin-Trigona's incarceration, as is apparent from the Motion for Hearing to Determine Whether Imposition of Civil Contempt Has Lost Its Coercive Effect and for Release of Debtor (filed May 15, 1984).

Accordingly, to avoid further administrative and clerical confusion and to ensure that the court devotes its attention only to *bona fide*, non-frivolous and non-duplicative applications for relief, the court directs that any application for a hearing with respect to Mr. Martin-Trigona's incarceration for civil contempt shall be filed only by one of his counsel, and then only upon a certification that: (a) he has been duly authorized to file such an application; (b) he has made inquiry of other counsel and that none of the other counsel representing Mr. Martin-Trigona in these proceedings is then planning to represent him with respect to the application in question; and (c) in his view, the threshold requirements noted above have been satisfied.

It is so ordered.