**In the Matter of Dr. Jean FORD, Contempt Proceedings Under Title 28, U.S.C., § 1826(a).**

**No. M 11–188 (RWS).**

United States District Court, S.D. New York.

July 26, 1985.

## OPINION

SWEET, District Judge.

Civil contemnor Dr. Jean Ford has applied to this court for release from confinement despite his failure to purge himself of his civil contempt. For the reasons discussed below, his motion is granted.

Dr. Ford was subpoenaed to testify before a grand jury of this district investigating a suspected conspiracy to violate provisions of federal law by commission of armed robberies, prison breaks and other illegal acts, and was granted use immunity. Dr. Ford moved before the Honorable Charles S. Haight to quash the subpoena on the grounds of marital privilege because his wife, Collette Pean, was under indictment on the conspiracy charge which was the subject of the grand jury investigation. On January 9, 1985 Judge Haight denied Dr. Ford's motion on the grounds that his spousal privilege was adequately protected by a "Chinese Wall" created in the United States Attorney's Office, and directed him to comply with the subpoena. Dr. Ford thereafter appeared before the grand jury

assistance, at 402 W. Wilson Street, Madison, Wisconsin, 53703.

on January 24, 1985 and refused to answer questions on the basis of the spousal privilege. The government then moved before this court for an order of contempt pursuant to 28 U.S.C. § 1826 and at the same time Dr. Ford asked this court to reconsider his motion to quash. By order dated January 28, 1985 Dr. Ford's motion was denied. Dr. Ford having once again declined to testify, he was found in contempt and confined pursuant to 28 U.S.C. § 1826(a). The adjudication of civil contempt was subsequently affirmed by the Second Circuit in *Grand Jury Subpoena of Ford v. United States,* 756 F.2d 249 (2d Cir.1985). Dr. Ford has been incarcerated in the Metropolitan Correctional Center since January 28, 1985.

Dr. Ford now seeks release from confinement, despite his continued failure to comply with this court's order, on the grounds that further incarceration would not serve the coercive purposes of civil contempt. He first argues that he should be released because the work of the grand jury before which he was subpoenaed has concluded. In addition, he contends that because he will never abandon his refusal to testify his release is mandated by *Simkin v. United States,* 715 F.2d 34 (2d Cir.1983) and *Sanchez v. United States,* 725 F.2d 29 (2d Cir.1984).

■ The purpose of the civil contempt sanction is to coerce a contemnor into complying with an order to testify before a grand jury. *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). When the grand jury's term expires, the contemnor must be released because confinement can no longer have any coercive impact. *Id.* In the present case, Dr. Ford contends that even though the grand jury before which he was subpoenaed is still sitting, its work has effectively come to an end and therefore his continued incarceration can serve no purpose. In support, he points to the fact that no new indictments or subpoenas have issued from the grand jury in several months.

Despite Dr. Ford's claims, there remains a present need for his testimony before the grand jury. The grand jury's investigation culminated in part in the trial of several defendants on charges of RICO conspiracy presently going forward before the Honorable Robert L. Carter in *United States v. Chimurenga et al.,* 84 Cr. 818 (RLC). It appears that Dr. Ford has knowledge of several of the *Chimurenga* defendants and may have knowledge of criminal activities in which the *Chimurenga* defendants as well as others may have engaged. According to the government, the evidence at the *Chimurenga* trial has demonstrated that the enterprise on trial conducted its affairs on a "need to know" basis and therefore no one person was privy to all criminal participants and activities. Dr. Ford may have knowledge that would fill remaining gaps in the investigation. In addition, Dr. Ford's claim that there is no public necessity for his testimony because the grand jury is no longer actively pursuing its investigation is not convincing. As the Honorable Peter K. Leisure noted in *In re Jean Baptiste,* No. M 11–188 (S.D.N.Y. July 3, 1985), "the investigation did not simply end, it ran into a brick wall because Jean-Baptiste and seven of his compatriots who have been subpoenaed have all decided to go to jail rather than testify ... A contemnor should not be able to gain release on grounds of lack of public necessity when he himself brought the investigation to a halt." Slip op. at 9. The grand jury's recent inactivity does not justify Dr. Ford's premature release.

Dr. Ford also contends that his unwillingness to testify at any future time renders the coercive element of confinement ineffective. Incarceration for civil contempt is intended to be remedial rather than punitive. *Shillitani v. United States, supra.* The civil contempt sanction is intended to coerce a contemnor into compliance rather than to punish him for his refusal to comply. *Id.* By enacting § 1826(a), Congress determined that confinement for up to eighteen months is coercive rather than punitive in nature. *See In re Grand Jury Investigation of Braun,* 600 F.2d 420, 425–27 (3d Cir.1979); *Matter of Dorie Clay,* No.

M 11–188, slip op. at 6–7 (S.D.N.Y. June 27, 1985) (Brieant, J.).

■■■■ Our Circuit has stated, however, that courts retain the discretion to determine, at some point prior to the expiration of eighteen months or the grand jury term, if the confinement is no longer coercive but is instead primarily punitive. *Simkin v. United States, supra,* 715 F.2d at 37; *Sanchez v. United States, supra,* 735 F.2d at 31. According to the Second Circuit, the court in each instance must decide if any "realistic possibility exists that the contemnor might yet testify if confinement is continued." If the court is convinced "after a conscientious consideration of the circumstances pertinent to the individual contemnor," *Simkin, supra,* at 37, that further incarceration is not likely to compel compliance, the contempt sanction becomes punitive rather than remedial in character and the contemnor must be released. *Soobzokov v. CBS, Inc.,* 642 F.2d 28, 31 (2d Cir.1981); *Sanchez, supra; Simkin, supra.* Although the court may consider such factors as the government's need for the testimony in making its decision, the primary issue to be resolved is whether the court is convinced that the contemnor has shown by a preponderance of the evidence that he is unlikely to be coerced by continued confinement. *In re Lionel Jean-Baptiste, supra,* slip op. at 7.

In the case at hand, I am forced to conclude that Dr. Ford has met that burden. Dr. Ford, a black male, is a twenty-eight year old graduate of Columbia University's medical school who considers himself to be a political activist. Since his graduation from medical school in May of 1984, he has been a resident in internal medicine at Harlem Hospital in New York. At the evidentiary hearing, he testified that since his childhood in Port-au-Prince, Haiti, he has participated in "whatever struggles there were for better conditions" in the communities in which he lived. (Tr. p. 5). Dr. Ford stated that his formal involvement in political organizations began in 1978 when he became involved as a Columbia student in activities concerning apartheid in South Af-

rica. Since that time he has been a member of organizations entitled the Mobilization Committee Against Police Brutality and the Sunrise Collective. Since 1982, in the context of his work for these organizations, he has participated in various forums, including demonstrations in front of the Metropolitan Correctional Center in support of several grand jury civil contemnors.

Mr. Lionel Legros, one of Dr. Ford's friends, testified that Dr. Ford was involved in "propaganda work" and demonstrations in 1982 directed towards combatting prejudice against Haitians because of alleged links to AIDS and in 1984 in the context of a May 3, 1984 uprising in Haiti over the importation of pigs. Dr. James Curtis Macintosh, a resident on leave from Harlem Hospital serving as president of the union for residents and interns in New York City, the Committee of Interns and Residents, also testified at the hearing and stated that Dr. Ford had served as a delegate to the union from Harlem Hospital, that he had assisted Dr. Macintosh in presenting forums to the community on various issues of concern, and that Dr. Ford had been active in a number of political issues of relevance to the black community, including the issues of police brutality and apartheid.

Dr. Ford testified that even before he received his subpoena in this case it was his view that the grand jury is a "political intelligence gathering body that is being used as a means to derail different constitutionally protected resistence movements." On cross-examination, he testified that although he would be willing to testify in an open court proceeding, he would under no circumstances consent to answer questions before a grand jury, regardless of the subject matter of the questions. He stated that he views the other individuals held in contempt for refusing to testify before the same grand jury investigations as his fellow political prisoners and that he has derived psychological support from this group. He also testified that to testify before the grand jury would be a betrayal

of these "comrades" and would have serious personal consequences for him as he would be viewed as a traitor to his cause and to his people. Finally, he stated that no length of incarceration would change his position as to not testifying. Both Dr. Macintosh and Mr. Legros stated that they believed Dr. Ford's commitment to political causes to be sincere and deeply felt and that in their opinions he would never cooperate with any grand jury investigation, although neither of them testified as to any prior knowledge of his attitude toward the grand jury.

■ Based on the evidence presented at the hearing as well as the affidavit submitted by Dr. Ford, I conclude that Dr. Ford has established by a preponderance of the evidence that there is no realistic possibility that he might testify if his confinement is continued. This conclusion is based not on the supposed depth of Dr. Ford's alleged political convictions but instead on the fact that Dr. Ford considers himself to be a member of a group of "grand jury resisters." Whether or not Dr. Ford's record of political activity supports his self-serving claims of being a dedicated political activist, it is evident that in the context of this particular case, he sees himself as a political crusader and enjoys the support and attention of not only his fellow contemnors but also that portion of the community which supports the underlying "cause." The element of "group think" generated by an organized group of individuals who call themselves freedom fighters and espouse the maintenance of a "wall of silence" may well be the sole reason for Dr. Ford's refusal to testify and in any event, plainly reinforces his decision to remain silent. I am convinced that whether or not Dr. Ford would continue to testify if he were alone in his alleged beliefs, given the support he receives from this group of "resisters" he is unlikely to change his mind and risk losing his newly acquired status as a hero. Since continued incarceration would, therefore, have no coercive value, Dr. Ford must be released.

I reach this conclusion despite my conviction that the logical result of *Simkin* and *Sanchez* is to emasculate the civil contempt sanction, since any organized resistance to a grand jury investigation will result in the release of any contemnor who can demonstrate a real involvement with that effort. This is true whether the individuals resisting the investigation are members of a political organization or of an organized crime group. In addition, as Judge Charles Brieant noted in *Matter of Dorie Clay, supra,* slip op. at 6, *Simkin* and *Sanchez* have the perverse result of creating a special, more lenient standard for that class of contemnor most committed to defying the court's order and thus least entitled to relief. Because I find that there is no realistic possibility that Dr. Ford will testify before the grand jury, however, I am constrained by the Second Circuit's holdings to release him from confinement despite his failure to purge himself of his contempt.

IT IS SO ORDERED.