**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEIL HUMPHREY,
            *Petitioner-Appellant,*

v.                                            No. 04-1036

CAROLYN ELIZABETH HUMPHREY,
            *Respondent-Appellee.*

NEIL HUMPHREY,
            *Petitioner-Appellant,*

v.                                            No. 04-2242

CAROLYN ELIZABETH HUMPHREY,
            *Respondent-Appellee.*

NEIL HUMPHREY,
            *Petitioner-Appellant,*

v.                                            No. 04-2465

CAROLYN ELIZABETH HUMPHREY,
            *Respondent-Appellee.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-03-1236-A)

Argued: December 1, 2005

Decided: January 10, 2006

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Duncan joined.

---

**COUNSEL**

**ARGUED:** George Peter Sibley, III, HUNTON & WILLIAMS, Richmond, Virginia, for Appellant. Stephen Douglas Halfhill, ALLRED, BACON, HALFHILL, LANDAU & YOUNG, Fairfax, Virginia, for Appellee. **ON BRIEF:** Maya M. Eckstein, HUNTON & WILLIAMS, Richmond, Virginia, for Appellant.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Neil Humphrey filed a petition under the International Child Abduction Remedies Act seeking the return of his children to the United Kingdom. He alleged that his wife, Carolyn Humphrey, violated the Hague Convention on Civil Aspects of Child Abduction by taking the couple's children to live in the United States. The district court stated that Mr. Humphrey was required to prove "beyond a reasonable doubt" that the children were "habitually resident" in the United Kingdom at the time of their removal and concluded that Mr. Humphrey's evidence fell "short of showing that." Because Mr. Humphrey need only establish the children's habitual residence by a preponderance of the evidence, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

I.

Neil Humphrey, a citizen of the United Kingdom, and Carolyn Humphrey, a citizen of the United States, married on February 2, 2002 in Burke, Virginia. After their marriage, the couple lived with Mrs. Humphrey's parents in Virginia for a short time. In March 2002, the couple moved to Scotland, where Mr. Humphrey worked. His employer subsequently fired him because of a dispute with his boss.

On May 31, 2002, Mrs. Humphrey gave birth to twins in Aberdeen, Scotland. The Humphreys resided in Scotland until July 2002, when, because of the couple's financial difficulties, Mrs. Humphrey and the children returned to the United States to live with her parents. While back in the United States, Mrs. Humphrey renewed her Virginia driver's license and voter's registration. Mr. Humphrey remained behind in Scotland to complete a three-month work contract.

In September 2002, Mr. Humphrey lost his job in Scotland. He then traveled to the United States to live with Mrs. Humphrey and her parents. While in the United States, he applied for a spousal visa and attempted to find a job in Richmond, Virginia, or Baltimore, Maryland.

Unable to secure a job and with time running out on his tourist visa, Mr. Humphrey returned to the United Kingdom in December 2002. Mr. Humphrey maintains that he intended to remain there and seek permanent employment. Mrs. Humphrey counters that the intent of the trip was simply to renew his tourist visa and to finish filling out the paperwork needed to obtain his spousal visa.

In February 2003, Mrs. Humphrey and the children traveled to England to be with Mr. Humphrey. Mrs. Humphrey testified that the purpose of this trip was to "support [her husband] in filing his paperwork and maybe expedite the process." She did not sell her car, or any other items, when she left Virginia. However, in England, Mrs. Humphrey filed an "Application for indefinite leave to remain in the United Kingdom as a spouse (husband or wife) or unmarried partner of a person present and settled in the UK." Mrs. Humphrey contends that she did so only after a long argument in which Mr. Humphrey told her they could obtain more welfare benefits if she signed the application — a charge that Mr. Humphrey denies. While living in the United Kingdom, both Humphreys joined the local library, although Mrs. Humphrey maintains she did so only because it would allow her husband an extra hour each day to use the Internet. The children attended play groups and saw physicians in the United Kingdom.

On May 8, 2003, without Mr. Humphrey's knowledge, Mrs. Humphrey and the children left the United Kingdom. After her plane landed in the United States, Mrs. Humphrey immediately called her

husband and informed him that she had taken the children to Virginia, but that he could call or visit them at any time.

Mr. Humphrey reported the incident to the local police the morning after his wife left with the children. On September 29, 2003, he filed a petition in the Eastern District of Virginia seeking the return of his children under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C.A. §§ 11601-11611 (West 1995 & Supp. 2005), and the Hague Convention on Civil Aspects of Child Abduction ("Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501.

## II.

ICARA requires a petitioner seeking return of an abducted child to show "by a *preponderance of the evidence*" that "the child has been wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1) (emphasis added). The Hague Convention, in turn, requires a petitioner to demonstrate that: (1) the children were "habitually resident" in petitioner's country of residence at the time of their removal; (2) the removal was in breach of petitioner's custody rights under the law of his home state; and (3) the petitioner had been exercising those rights at the time of removal. *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001) (quoting Hague Convention arts. 3-4).

After hearing testimony from both parents, the district court ruled from the bench that:

> There is no question at the time of the removal that the children were in England. And there is no question that England has a law that prohibits the taking of children under these circumstances.

> And there is no question at the time that the children were taken, [Mr. Humphrey] was exercising his rights of custody. He was living with his wife and living with the children. And there was testimony that he was involved in their activities.

The problem I have with Mr. Humphrey's case is finding from the evidence presented here that the children were habitually residing in England. . . .

Mr. Humphrey has the burden in this case to show *beyond a reasonable doubt* that these children were habitually residing in England at the time that they were taken. And I find that his evidence falls short of showing that.

As I weigh the evidence in this case, and I have to do that on the testimony that I have listened to and the exhibits that I have received in evidence, and weighing the evidence presented, I would say that the evidence tips on the defendant's side, on Mrs. Humphrey's side as to what was the habitual residence of the children at the time they left England and came back here.

And so, for that reason, I will have to dismiss this petition because the evidence does not show that he is entitled to such relief.

J.A. 186-88 (emphasis added).

Mr. Humphrey argues that the district court employed the wrong standard of proof — beyond a reasonable doubt — rather than the proper standard — preponderance of the evidence. He contends that this error requires us to vacate the district court's order and remand the case. Mrs. Humphrey does not dispute that the district court misstated the law when it said that her husband must establish the children's habitual residence "beyond a reasonable doubt." *See* 42 U.S.C.A. § 11603(e)(1). Characterizing this error as a mere "slip of the tongue," *see* Brief of Appellee at 12, she argues that the district court actually *applied* the correct preponderance standard when it stated that the evidence *tips* on the defendant's side.

Mr. Humphrey concedes that the word "tips," if read in isolation, "could reasonably be interpreted as indicating that the district court, in fact, applied the preponderance standard." Brief of Appellant at 13. He insists, however, that the district court's language cannot be read

in isolation; the incorrectly stated burden of proof, Mr. Humphrey contends, was the "fulcrum" on which the court's scale tipped.

While we find Mr. Humphrey's argument somewhat more persuasive, even if we were to assume that both parties present equally plausible interpretations of the district court's oral ruling, Mrs. Humphrey still would not prevail. If two equally plausible accounts of the district court's analysis exist, we must conclude that the ruling was ambiguous. Faced with such ambiguity, we would presume that the district court did just what it said: applied the incorrect, reasonable doubt standard.

The error is a serious one because "the proper allocation of the burden of proof is an important procedural right." *Bruner v. Office of Pers. Mgmt.*, 996 F.2d 290, 292 (Fed. Cir. 1993). Indeed, in a criminal case, a defective instruction as to the burden of proof is fatal to a jury verdict. *See Neder v. United States*, 527 U.S. 1, 8 (1999); *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993).

III.

Generally, when a trial court applies the incorrect burden of proof in a civil case, appellate courts remand the case for a determination under the appropriate standard. *See Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) (citing *Kelley v. S. Pac. Co.*, 419 U.S. 318, 331-32 (1974)); *see also SRSB-IV, Ltd. v. Continental Sav. Ass'n*, 979 F.2d 39, 40 (5th Cir. 1992); *Sanchez v. United States*, 725 F.2d 29, 31 (2d Cir. 1984); *Daye v. Harris*, 655 F.2d 258, 262-64 (D.C. Cir. 1981); *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977); *A.W. Thierren Co., Inc. v. H.K. Ferguson Co.*, 470 F.2d 912, 914 (1st Cir. 1972).

The Supreme Court explained the rationale for this general rule in *Kelley v. Southern Pacific Co.*, 419 U.S. 318 (1974). There, the Court considered a railroad's liability under the Federal Employers' Liability Act for the injuries of a worker employed by one of the railroad's wholly owned subsidiaries. *See id.* at 319-20. The Court affirmed the Ninth Circuit's holding that the district court had erred by applying traditional principles of agency law in determining whether the worker was "employed by" the railroad. Instead, the district court

should have examined whether the parties had a "master-servant relationship." *Id.* at 323-26. The Supreme Court disagreed with the Ninth Circuit, however, on the appropriate method for resolving this error. *Id.* at 331. While the Ninth Circuit had simply entered judgment for the railroad, the Supreme Court ordered that the case be sent back to the district court to make the relevant determination in the first instance. "[W]e think the best course at this point is to require the trier of fact to re-examine the record in light of the proper legal standard." *Id.* at 332. Remand seems especially prudent when, as here, the district court may have employed too high a burden of proof. *Cf. Sanchez*, 725 F.2d at 31 ("[T]he possibility that an excessively strict burden of proof was imposed persuades us to return the matter to the District Court . . . .").

We recognize, however, that the presumption in favor of remand, like many general rules, does allow a narrow exception. A court need not remand a case if "the record permits only one resolution of the factual issue." *Pullman-Standard*, 456 U.S. at 292. For example, even when the trial court imposes the burden of proof on the wrong party, an appellate court need not remand if that party has not satisfied its more limited burden of production. *See, e.g.*, *Brown Daltas & Assocs., Inc. v. Gen. Accident Ins. Co. of Am.*, 48 F.3d 30, 37-39 (1st Cir. 1995). Similarly, when a trial court applies the wrong legal test or quantum of proof, an appellate court may resolve the case without remanding if the evidence would inevitably produce the same outcome under the correct standard. *See, e.g.*, *In re Taxman Clothing Co., Inc.*, 905 F.2d 166, 171 (7th Cir. 1990); *Fleming Bldg. Co., Inc. v. Ne. Okla. Bldg. & Constr. Trades Council*, 532 F.2d 162, 165 (10th Cir. 1976).

But, unlike *In re Taxman Clothing Co.*, *Brown Daltas & Associates*, and *Fleming Building Co.*, the record in this case permits more than one resolution. On the basis of the record evidence, a court might reasonably credit Mrs. Humphrey's account that she only went to the United Kingdom to expedite her husband's return to their habitual residence in the United States. After all, Mrs. Humphrey testified that she had renewed her Virginia driver's license and voter's registration, and that she had kept her car in anticipation of her imminent return from the United Kingdom.

On the other hand, a court could find that the family established its habitual residence in the United Kingdom. Under the Hague Convention, a habitual residence may be established in a place even if a family intends to stay there only "for a limited period." *Feder v. Evans-Feder*, 63 F.3d 217, 223 (3d Cir. 1995) (quoting 1989 decision from Family Division of the United Kingdom's Royal Courts of Justice interpreting Hague Convention). Given the evidence that Mrs. Humphrey applied for leave to remain indefinitely in the United Kingdom, that both parents obtained library cards, and that the children participated in play groups and saw local physicians there, a court might conclude that the Humphreys met that standard.

Because this evidence "would have supported a judgment for either side," *In re Taxman Clothing Co.*, 905 F.2d at 171, we vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*