**In the Matter of John CREDEDIO, a witness before the Special December, 1983 Grand Jury.**

No. 85–1274.

United States Court of Appeals, Seventh Circuit.

Argued March 19, 1985.

Decided April 3, 1985.

Posner, Circuit Judge, dissented and filed opinion.

Melbourne A. Noel, Jr., Laser, Schostok, Kolman & Frank, Chicago, Ill., for plaintiff.

Charles B. Sklarsky and Robert W. Tarun, Asst. U.S. Attys., Chicago, Ill., for defendant.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

BAUER, Circuit Judge.

John Crededio appeals the January 21, 1985 order of the District Court for the Northern District of Illinois refusing to terminate his commitment for civil contempt. Crededio was subpoenaed to testify before the Special December 1983 Grand Jury but invoked his fifth amendment right against self-incrimination. Although the court granted Crededio immunity, Crededio still refused to testify and, by minute order dated June 14, 1984 was remanded to the custody of the Attorney General "until he obeys the order to appear and testify, or for the life of the Grand Jury, whichever occurs first." (R. at 6).

Crededio moved on December 14, 1984 to terminate the district court's order of confinement for civil contempt on the grounds that (1) breaches of grand jury secrecy jeopardized his safety; (2) inasmuch as Crededio had decided that he would not testify before the grand jury, his incarceration was no longer coercive, but punitive and (3) the investigation for which Crededio was subpoenaed had ceased and, accordingly, his testimony is no longer needed. In support of his motion for release, Crededio attached an eight-page affidavit and asserted that it would be morally wrong for him to testify "at the expense of hurting a third party to whom he was related." (Petition of Crededio, para. 4). In response to Crededio's motion, the district court held two hearings, at which Crededio was present and spoke, and ordered the government to produce for *in camera* examination documentation of the ongoing criminal investigation and Crededio's importance to it. By memorandum and order dated January 21, 1985, Judge McGarr denied Crededio's motion for release, stating:

It is the finding of the court, therefore, that Mr. Crededio's continued incarceration, forming as it does the basis for a compulsion upon him to testify and contribute information to an ongoing investigation, is sanctioned by law.

(R. at 9, p. 2). Crededio appeals. We affirm.

■ Our analysis commences with the proposition that the judiciary possesses the inherent power "to coerce obedience to its orders by summarily holding a recalcitrant person—such as an immunized witness who refuses to testify at a grand jury proceeding or at trial—in civil contempt and then imprisoning him until he complies." *In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 422 (3d Cir.1979) (footnote omitted). Unlike criminal contempt, the purpose of which is to punish contumacious acts and vindicate the court's authority, civil contempt is primarily coercive in nature. *United States of America ex rel. Thom v. Jenkins*, 760 F.2d 736, 738 (7th Cir.1985) (citing *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 251, 92 S.Ct. 2083, 2087, 32 L.Ed.2d 719 (1972)); *Simkin v. United States*, 715 F.2d 34, 36–37 (2d Cir.1983); *In re Grand Jury Investigation*, 600 F.2d at 422. The rationale underlying civil contempt is simply that contemnors hold "the key of their prison in their own pocket." *Braun*, 600 F.2d at 423 (citing *In re Nevitt*, 117 F. 448, 461 (8th Cir.1902)).

■ Where incarceration for civil contempt, however, ceases to be coercive and becomes punitive, "due process considerations oblige a court to release a contemnor from civil contempt ...." *Simkin*, 715 F.2d at 37; *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir.1981); *Braun*, 600 F.2d at 423–24; *Lambert v. State of Montana*,

545 F.2d 87, 89–91 (9th Cir.1976). Because no "bright line" may be drawn between civil and criminal contempt, i.e., "civil contempt may have an incidental punitive effect and, likewise criminal contempt may result in an incidental benefit to the complainant," *Braun,* 600 F.2d at 423 n. 6 (citing *Gompers v. Buck Stove & Range Co.,* 221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)), the determination whether a civil contempt sanction has lost its coercive effect rests within the sound discretion of the district court. *Thom,* at 738; *Simkin,* 715 F.2d at 37; *Soobzokov,* 642 F.2d at 31; *Braun,* 600 F.2d at 425–27. "[I]n the absence of unusual circumstances, a reviewing court should be reluctant to conclude, as a matter of due process, that a civil contempt sanction has lost its coercive impact at some point prior to the eighteen-month period prescribed as a maximum by Congress [in 28 U.S.C. § 1826]." [1] *Simkin,* 715 F.2d at 37 (citing *Braun* at 428). The district court's conclusion in this regard is "virtually unreviewable." 715 F.2d at 38.

■ Turning now to Crededio's arguments, Crededio relies upon two recent Second Circuit cases, *Sanchez v. United States,* 725 F.2d 29 (2d Cir.1984) and *Simkin v. United States,* 715 F.2d 34 (2d Cir. 1983), for the proposition that the district judge evaluating a motion for release from civil contempt incarceration must make an "individualized decision" based upon "a conscientious assessment of the relevant factors" as to whether incarceration has lost its coercive effect and has become pu-

nitive. *Simkin,* 715 F.2d at 37 n. 1, 39. Crededio contends that the district court ignored the standards enunciated in *Sanchez* and *Simkin* and denied his motion for release without any consideration of his affidavit explaining his moral beliefs and without consideration of other relevant circumstances, such as the effect of his incarceration upon his family and business. Crededio argues that this Court must remand the case to the district court for a detailed evidentiary hearing into the reasons for Crededio's refusal to testify.

In *Simkin v. United States,* 715 F.2d 34 (2d Cir.1983), the contemnor sought his release on four occasions during a period of eight months, each time asserting that he would not testify because of fear for himself and his family and for religious reasons. The district judge denied Simkin's motion for release, stating, *inter alia,* that "[c]ivil contempt says that if he is never going to talk then he has to suffer the consequences." 715 F.2d at 39. In remanding the case to the district court for further consideration, the Second Circuit held that the district court had failed to make an individualized determination whether "continued confinement of [Simkin] retains any realistic possibility of achieving its intended purpose." 715 F.2d at 39. The Second Circuit explained:

The judge need not, of course, accept as conclusive a contemnor's avowed intention never to testify. *United States v. Dien, supra,* 598 F.2d at 745. Even if the judge concludes that it is the con-

1. The Recalcitrant Witness Statute, 28 U.S.C. § 1826, provides:

§ 1826. Recalcitrant witnesses

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or
(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the day of filing of such appeal.

temnor's present intention never to testify, that conclusion does not preclude the possibility that continued confinement will cause the witness to change his mind. *Id.* What is required of the judge is a conscientious effort to determine whether there remains a realistic possibility that continued confinement might cause the contemnor to testify. The burden is properly placed on the contemnor to demonstrate that no such realistic possibility exists. As long as the judge is satisfied that the coercive sanction might yet produce its intended result, the confinement may continue. But if the judge is persuaded, after a conscientious consideration of the circumstances pertinent to the individual contemnor, that the contempt power has cased to have a coercive effect, the civil contempt remedy should be ended.

715 F.2d at 37.

In *Sanchez v. United States,* 725 F.2d 29 (2d Cir.1984), the Second Circuit digressed further upon the standards enunciated in *Simkin.* In this case, Sanchez moved for release on the grounds that incarceration was no longer coercive and had, in fact, become punitive. Sanchez had been incarcerated for a year and had commenced a hunger strike. The district court summarily rejected Sanchez's motion for release finding that Sanchez failed to demonstrate "unusual circumstances" which justified releasing him prior to the eighteen-month period set forth by Congress in 28 U.S.C. § 1826 and that Sanchez had failed to show "a realistic possibility" that continued confinement would not coerce him to testify. The Second Circuit remanded the case to the district court, stating that the eighteen-month period in § 1826 was the maximum period which could be found to be coercive; the district court retains nonetheless a "broad discretion ... to determine that a civil contempt sanction has lost its coercive effect ...." 725 F.2d at 31, citing *Simkin* at 37. The Second Circuit reiterated that "[t]he issue is whether the contemnor has persuaded the district judge that there is no realistic possibility that continued con-

finement might cause the contemnor to testify." *Id.* at n. 2.

Applying the standards of *Simkin* and *Sanchez* to the facts of the present case, we conclude that the district court made a "conscientious assessment of the relevant factors" and an individualized determination that Crededio's incarceration had not lost its coercive effect. Unlike *Simkin,* where the district court denied the contemnor's motion after consideration of his affidavit, 715 F.2d at 38 n. 2, or *Sanchez,* where the court heard argument by contemnor's attorney and considered his affidavit, 725 F.2d at 30, here the district court considered Crededio's motion and supporting affidavit and held two hearings. Crededio was present at both hearings and permitted to explain to the Court why he would not testify. The district court ordered the government to submit documentation *in camera* to support its claim that the investigation for which Crededio had been subpoenaed was still continuing. At the close of the second hearing, the district court invited Crededio to submit anything further which he wished to be considered. Finally, the memorandum opinion and order of January 21, 1985 which denied Crededio's release contained the explicit fact-finding that Crededio's continued confinement formed the basis for a compulsion upon him to testify.

 Crededio places great emphasis upon the district court's concern that releasing him would undermine the civil contempt sanction. Crededio argues that this demonstrates that the district court did not consider the individual nature of his case and his assertions that his incarceration is no longer coercive. We disagree. This is a factor which, among others, the district court may consider in determining whether to release Crededio. "[T]he civil contempt power would be completely eviscerated were a defiant witness able to secure his release merely by boldly asserting that he will never comply with the court's order." *Braun,* 600 F.2d at 425. Other factors which the district court could permissibly consider include the maximum period of

incarceration permitted by Congress in § 1826, as well as the assertions made by the contemnor in support of his decision not to testify. Here, Crededio asserts that he has only social information about the target of the grand jury, yet also states that he cannot utter from his lips words that would hurt others. Crededio asserts that his moral principles [2] preclude him from making statements to the grand jury which would hurt, directly or indirectly, members of his family, yet includes within the ambit of family members the target of the grand jury investigation who is a non-family member. The reasons asserted by Crededio for why he will not testify are inherently inconsistent and lack credibility.

■ The only other argument which Crededio raises for our consideration is that grand jury leaks cause him to fear for his safety and the safety of his family if he testifies. These assertions of grand jury leaks are pure speculation, supported solely by the conclusory and self-serving statements of Crededio. These unsupported allegations fail to meet the "heavy burden" which Crededio bears to establish grand jury abuse. *See, e.g., Matter of the Special April 1977 Grand Jury,* 587 F.2d 889, 892 (7th Cir.1978).

For the reasons stated above, we conclude that the district court did not abuse its discretion in denying Crededio's motion for release. We do, however, direct the district court to periodically evaluate Crededio's incarceration at reasonable intervals, or, in the court's discretion, when requested by either party. *See, e.g., Thom,* at 740. At any rate, "the criminal contempt sanction is available ... [to] vindicate the court's authority, *see, e.g., United States v. Patrick,* 542 F.2d 381, 384, 392–93 (7th Cir.1976) (four-year criminal contempt sentence imposed upon recalcitrant grand jury witness previously confined for civil contempt), *cert. denied,* 430 U.S. 931, 97 S.Ct.

1551, 51 L.Ed.2d 775 (1977)." *Simkin,* 715 F.2d at 37.

AFFIRMED.

POSNER, Circuit Judge, dissenting.

If the district judge had found that keeping Crededio in jail might yet induce him to testify before the grand jury, then my brethren would be right to affirm the judge's refusal to order Crededio's release. But I am unable to extract such a finding from the record. At the time of the hearing before the district judge, Crededio had already been in jail seven months for civil contempt, and his lawyer said, "He just cannot [meaning, will not] testify," for a variety of personal reasons including fear for his safety if he did testify. The judge could, of course, have disbelieved the lawyer and have found that there was some chance that another month or two or ten might persuade Crededio to lay aside his fears. But instead the judge cut off this line of inquiry by saying, "The argument that Mr. Crededio should not be subject to the continuing contempt power of this Court because he is fixed in his intention not to testify is one I have heard before ... and I have to reject because the reductio [ad absurdum] of that is if a man is ordered to do something and is held in contempt in a prison until he does it, he can free himself by becoming more determined not to do it. The only argument you have raised today, Mr. Noel [Crededio's lawyer], which is of serious concern to me ... is the suggestion that the Grand Jury ... no longer want his testimony ...." Later the judge said, "And when a man comes up and says ... there is no expectation that I will ever testify, I can't accept that as a reason for ending the incarceration ...." The judge also said: "The only protection the law affords [Crededio] is that 18 month protection." (Eighteen months is the maximum period of imprisonment for a civil contempt.) And the judge's opinion states: "the fact that he [Crededio] cannot be ex-

**2.** While Crededio is certainly entitled to his moral beliefs, such beliefs do not alter or provide a defense to Crededio's duty to testify before the grand jury. It is a hornbook proposition that the public has a right to every man's evidence.

pected to testify does not end the investigation." It doesn't matter whether this means the judge thought Crededio would not in fact testify, or (less probably) whether this was merely an assumption the judge made for the sake of argument. All that matters is that the judge made clear that he thought it irrelevant whether or not continued imprisonment would make Crededio change his mind and testify before the grand jury.

Against this background, I cannot agree with my brethren that the statement in the district judge's opinion "that Mr. Crededio's continued incarceration, forming as it does the basis for a compulsion upon him to testify and contribute information to an ongoing investigation, is sanctioned by law" is a finding that keeping him in jail will be effective. No doubt it is "the basis for a compulsion upon him to testify"—but a compulsion unlikely to compel.

The Second Circuit in *Simkin v. United States*, 715 F.2d 34, 37 (2d Cir.1983), held that a district judge confronting a contemnor who says he will not testify even if he is kept in jail is required to make "a conscientious effort to determine whether there remains a realistic possibility that continued confinement might cause the contemnor to testify." I think this is right, and that the district judge in the present case did not make such an effort, because he thought it irrelevant whether or not the contemnor could be coerced by continued imprisonment. The judge was concerned that if he paid any attention to the contemnor's determination not to testify, he would just be encouraging contempt. But that is not true. The judge does not have to believe the contemnor's assertion that he will never testify, and is unlikely to believe it unless (as in this case) the contemnor has already spent a number of months in prison for the contempt. More important, a finding that the contemnor is indeed determined not to testify does not let him off the hook; for what the judge should do upon making that determination is not only release the contemnor but also refer the matter to the United States Attorney for prosecution for criminal contempt. There is no

fixed ceiling on the fine or prison sentence that can be meted out to one convicted of it. See 18 U.S.C. § 401(3). In *United States v. Patrick*, 542 F.2d 381, 392–93 (7th Cir.1976), this court upheld a four-year sentence for criminal contempt, imposed on a recalcitrant grand jury witness—like Crededio.

We should keep a bright line between civil and criminal contempt. Putting a person in prison for up to 18 months (which is almost as much time as the average federal criminal defendant serves who is sentenced to 5 years in prison), without a full trial, and with none of the safeguards of the criminal process, see 3 Wright, Federal Practice and Procedure: Criminal 2d § 705 (1982), is an anomaly in our system, and is permitted only when the purpose is not to punish for past miscreancy but to induce a specific act that the law has a right to coerce, in this case testifying before the grand jury. See *id.*, § 704, at pp. 823–24. As soon as it is clear that the inducement won't work, the purpose of civil contempt lapses, and the continued imprisonment of the man becomes penal, and requires a criminal proceeding.

Although I would not affirm, I agree with my brethren's implicit determination that we have the power to do so despite the fact that we have failed to dispose of the appeal within 30 days of the filing of the notice of appeal, contrary to 28 U.S.C. § 1826(b): "Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal." Crededio's counsel was emphatic at oral argument (held just after the 30 days had elapsed) that he had no complaint with the court's allowing the deadline to pass—that he had concurred in a briefing schedule which made it impossible as a practical matter for us to decide the appeal sooner than we have done. But especially in light of the recent and inconclusive discussion of the issue in *In re Grand Jury Proceedings of August, 1984*, 757 F.2d 108, 110–112 n. 1 (7th Cir.1985), it seems worth considering briefly whether

our missing the 30-day deadline deprives us of jurisdiction of the appeal, in which event we would have to dismiss the appeal whatever position Crededio's counsel has taken. It seems clear that the deadline is not jurisdictional. It is designed for the protection of the contemnor, and he would be made worse off if, because we dragged our heels, his appeal had to be dismissed and he had to start all over in the district court with a request to reconsider whether he should continue to be kept in jail. The logical sanction for noncompliance with the deadline is not to dismiss the appeal, so that the contemnor continues to languish in jail, but to order him released. But of course if the contemnor himself does not complain about our delay, he waives his claim to a sanction for the delay. And maybe in a case such as this where the deadline is missed by only a few days, releasing the contemnor might in any event be an excessive sanction, though that is not an issue we need decide.