The UNITED STATES of America, Plaintiff–Appellee,

v.

Harold JONES, Defendant–Appellant.

No. 88–3460.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1989.

Decided Aug. 9, 1989.

Renee E. Schooley, Federal Public Defender, St. Louis, Mo., Clyde Kuehn, Eric Rhein, Kuehn & Rhein, Belleville, Ill., for Harold H. Jones.

Ralph M. Friederich, Asst. U.S. Atty., East St. Louis, Ill., for U.S.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WILL, Senior District Judge.*

BAUER, Chief Judge.

On August 2, 1987, a federal grand jury was empanelled to conduct an investigation into narcotics activity in the Southern District of Illinois. The grand jury subpoenaed Harold Jones pursuant to a Writ of Habeas Corpus Ad Testificandum, to answer questions about this narcotics activity. At the time, Jones was serving a ten-year sentence for possession with intent to distribute cocaine. Jones's attorney informed the United States Attorney that Jones would not testify before the grand jury unless compelled to do so. On October 14, 1987, the district court granted Jones immunity and ordered him to testify. Thereafter, Jones appeared before the grand jury but refused to testify despite the court's order. On November 13, the court again ordered Jones to testify, but Jones again refused. The district court responded by holding Jones in civil contempt pursuant to 28 U.S.C. § 1826, and ordering him confined until he was willing to testify, or until the term of the grand jury expired, but in no event no longer than 18 months.

Pursuant to this order, Jones was incarcerated in the St. Clair County jail and then Williamson County jail from November 24, 1987 to August 2, 1988. On August 2, the first grand jury's term expired and a second grand jury was empanelled to continue the narcotics investigation. The second grand jury had no better luck than the first in eliciting testimony from Jones. On September 27, Jones appeared before the second grand jury and refused to testify. The court again ordered Jones to testify but again he refused. On December 7, the district court held Jones in contempt for the second time and ordered him confined until he was willing to testify or until the second grand jury term expired, but in no event no longer than 18 months.

Jones now appeals from this second civil contempt order. His appeal is based upon the following colloquy which occurred at the second contempt hearing:

MR. JONES: What I am trying to say is, I have already did dead time in the county jail. It's no longer coercement, okay? It's, you know, that is what you are supposed to stay in the county jail; to coerce you into talking but it didn't work.

THE COURT: I don't think it's intended as coercement.

MR. JONES: Clearly stated in the law book.

THE COURT: It's punishment for your failure to abide by the Court order. That's clearly punishment. If it indirectly involves coercion, why then it does, but it is not my intention to coerce you to do anything....

Transcript at p. 10.

Jones argues that because the district court intended to punish him for his refusal to testify, rather than intending to coerce him to testify, the court, in effect, held him in criminal, not civil, contempt. Accordingly, he seeks to reduce his sentence to six months under *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), which holds that a criminal contemnor cannot be imprisoned more than a total of six months without a jury trial. We reject Jones' argument and affirm the decision of the district court.

 In making his argument, Jones relies on a decision from this circuit, *In re*

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

*Crededio,* 759 F.2d 589 (7th Cir.1985), and several decisions from other circuits, *see, e.g., Sanchez v. United States,* 725 F.2d 29 (2nd Cir.1984), *Simkin v. United States,* 715 F.2d 34 (2nd Cir.1983), which require a district court to determine whether the sanction will have a coercive effect before entering an order of civil contempt. Under this approach, the power of the district court to enter a contempt order depends upon the court's purpose in imposing the sanction: if the court's purpose is punitive, the order is criminal in nature, but if its purpose is remedial, then the order is civil in nature. Although the distinguishing feature between the two kinds of contempt orders is the purpose that the court seeks to achieve, *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966), the Supreme Court's decision in *Hicks v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), teaches that the purpose of the contempt order is to be determined by the nature of the sentence, not by the contents of the judge's head.

In *Hicks,* the Supreme Court was asked to determine whether a contempt order imposed by a California state court was a criminal or civil penalty for the purpose of affording the contemnor the safeguards of the Due Process Clause. The Court eschewed a test which would make the "classification of the relief imposed in a State's proceedings turn simply on what their underlying purposes are perceived to be." *Hicks,* 108 S.Ct. at 1431. Rather,

> the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford.... If the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.'

*Id.* at 1429 (*quoting Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)).

The logic of *Hicks* applies with equal force to challenges to contempt orders entered by federal courts pursuant to 28 U.S.C. § 1826. Whether a contempt order is entered by a state or federal judge, the futility of ascertaining a judge's intent is readily apparant. As the Court noted in *Hicks,* "[i]n contempt cases, both civil and criminal relief have aspects that can be seen as either remedial or punitive or both...." *Hicks,* 108 S.Ct. at 1431. In this situation, *Crededio* would require a reviewing court to arbitrarily highlight one motivation over the other. Requiring a district court to ascertain the future effect of a contempt order is also an exercise in futility. Given that the district court operates without benefit of a crystal ball, how is the court to determine whether a recalcitrant witness will or will not cave into the coercive pressure of a civil contempt order? All recalcitrant witness vehemently insist they will never talk. Trying to differentiate among them is a line of inquiry which is speculative at best and time-consuming and pointless at worst.

In this case, the district court ordered that Jones be confined until he was willing to testifying or until the passage of eighteen months, the statutory maximum provided in Section 1826. Because Jones "can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the ... [court's] order," *Hicks,* 108 S.Ct. at 1431 n. 7, his sanction is civil in nature. Jones has already served eight months in jail under the first contempt order and the district court sentenced him to serve what could amount to another eighteen months. Section 1826, however, limits the total period of imprisonment for civil contempt to eighteen months. Therefore we affirm the judgement of the district court but modify the court's order to put a cap of eighteen months on the aggregate period of civil confinement.

AFFIRMED AS MODIFIED.