**In the Matter of GRAND JURY PRO-CEEDINGS EMPANELLED MAY 1988.**

**Appeal of Dennis FRELIGH.**

**No. 89–3337.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 21, 1989.

Decided Nov. 22, 1989.

Opinion Jan. 30, 1990.

Ronald J. Stone, argued, Stratton, Dobbs, Nardulli & Lestikow, Springfield, Ill., for appellant.

Byron G. Cudmore, Asst. U.S. Atty., argued, Office of the U.S. Atty., Springfield, Ill., for appellee.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

Dennis Freligh pleaded guilty to federal narcotics offenses and on June 20, 1989, was sentenced to ten years in prison. The following month he was called before a federal grand jury to answer questions about the activities of his fellow narcotics conspirators. He refused, pleading the Fifth Amendment, and on August 15 the judge in charge of the grand jury (Chief Judge Baker) ordered him to testify under a grant of immunity the adequacy of which is not questioned. 18 U.S.C. §§ 6002, 6003; *In re Grand Jury Proceeding, Special April 1987*, 890 F.2d 1 (7th Cir.1989). Freligh appeared before the grand jury on September 6 but refused to testify, telling the jury that he was refusing to answer its questions "for fear for my life and my kids Lindsay and Adam and my brothers and sisters.... I understand that you can give me protection, move me out of the area, but you can't move my whole family. I can't give up my whole family." Within hours Freligh was brought before the judge who had sentenced him for the narcotics violations, Judge Mills, who asked him whether it was true that he had re-fused to testify before the grand jury. Freligh admitted he had, adding that "for the safety of me and my family I just don't feel that I can." The judge told Freligh that he had to answer the grand jury's questions, and he was brought back before the grand jury the same day, but again refused to answer its questions.

The United States Attorney filed a petition for contempt on September 11. Freligh's lawyer requested a hearing, but on September 25, without responding to this request or conducting any further hearing, Chief Judge Baker held Freligh in civil contempt for disobeying his original order to testify and ordered him incarcerated until he testifies or until the statutory limitation on civil contempt for disobeying an order to testify before a grand jury expires, which will be either upon the discharge of the grand jury or the end of eighteen months, whichever comes first. 28 U.S.C. § 1826(a). The judge found that "the fear of retaliation expressed by Dennis Freligh as grounds for non-compliance with the prior order of this court is speculative and unsupported except for the self-serving statements of Dennis Freligh." The judge directed that the running of Freligh's ten-year prison term be suspended while he is incarcerated for contempt.

The appeal challenges the denial of the request for a hearing before Chief Judge Baker. The only hearing that Freligh received was the one before Judge Mills on September 6, and it was perfunctory. Freligh was given no opportunity to amplify or substantiate his fear of retaliation if he testified, or to address the question of the proper sanction for his contempt, if contempt it was.

A federal civil contempt proceeding is a civil proceeding governed by the rules of civil procedure. *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 352 (7th Cir.1976); *Rogers v. Webster*, 776 F.2d 607, 610 (6th Cir.1985) (per curiam); 3 Wright, Federal Practice and Procedure, Crim.2d, § 705 (1982). Those rules entitle a party to an evidentiary hearing only if there are genuine issues

of material fact. Fed.R.Civ.P. 56; cf. Rule 50. (For the application of this principle to civil contempt, see *CFTC v. Premex, Inc.*, 655 F.2d 779, 782 n. 2 (7th Cir.1981); *In re Grand Jury Proceedings*, 795 F.2d 226, 234 (1st Cir.1986); *In re Bianchi*, 542 F.2d 98 (1st Cir.1976).) There is no comparable principle in criminal cases because the prosecutor cannot move for a directed verdict or for summary judgment. The right to a hearing in a civil contempt proceeding if (but only if) there are material contested facts is implicit in the witness contempt statute itself. For by entitling the witness to show that there was "just cause" for his disobedience, 28 U.S.C. § 1826(a), the statute must presuppose that he have a reasonable opportunity to prove this. *United States v. Powers*, 629 F.2d 619, 626 (9th Cir.1980); *In re Grand Jury Investigation*, 545 F.2d 385, 388 (3d Cir.1976).

The government says there are no genuine issues of material fact in this case. We disagree.

■ 1. If a witness can establish that he has not only a genuine but also a reasonable fear of retaliation against himself or his family, he places on the government the burden either of taking reasonable steps to protect him against such retaliation or, at the very least, of explaining why it should not be required to take such steps. No cases so hold, but *In re Grand Jury Proceedings*, 605 F.2d 750, 752–53 (5th Cir.1979) (per curiam), treats the proposition as arguable, and to us it seems implicit in the equitable character of civil contempt (of which more shortly); it is therefore unnecessary to decide whether it is strictly a defense. There was no offer of protection here, because Freligh was given no opportunity to demonstrate that he or his family was in danger—a material fact, even if material only to the adequacy of the protective measures to which he would be entitled if he showed that the danger was real.

2. *Piemonte v. United States*, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961), states in dictum that if, after all reasonable protective steps are taken, the witness still has a genuine and reasonable fear for his or his family's safety if he testifies, the government can nevertheless insist on his testifying. "Neither before the Court of Appeals nor here was fear for himself or his family urged by Piemonte as a valid excuse from testifying. Nor would this be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law.... The Government of course has an obligation to protect its citizens from harm. But fear of reprisal offers an immunized prisoner no more dispensation from testifying than it does any innocent bystander without a record." *Id.* at 559 n. 2, 81 S.Ct. at 1722 n. 2. People inclined to intimidate witnesses must be shown that intimidation does not pay—does not succeed in preventing the witness from testifying. The demonstration is not complete, because the witness may decide to go to jail for eighteen months rather than endanger himself or his family. But faced with protracted incarceration he is quite likely to reduce his estimate of the gravity of the threat.

In a case as barren of relevant facts as this one is, we need not decide whether reasonable fear can ever be a defense if the government makes a reasonable offer of protection; Freligh was denied an opportunity to substantiate his fears and the government an opportunity to show what steps it would be willing to take to allay them. We regard the question as an open one, rather than settled by *Piemonte*, although the dictum we quoted is repeated in many cases. E.g., *United States v. Damiano*, 579 F.2d 1001, 1004 (6th Cir.1978). In *United States v. Patrick*, 542 F.2d 381, 388 (7th Cir.1976), we read it to mean only that "fear, by itself, will not legally justify or excuse a witness' refusal to testify in violation of a court order," and went on to indicate that duress would be a defense; the distinction between fear and duress, we suggested, was the difference between vague unsubstantiated fears and a palpable imminent danger. To similar effect see *Harris v. United States*, 382 U.S. 162, 166–67, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965); *United States v. Housand*, 550 F.2d 818, 825 (2d Cir.1977). All three of these cases, however—*Patrick*, *Harris*, and *Hou-*

*sand*—involved criminal rather than civil contempt. The considerations may be different in the civil setting. *Maggio v. Zeitz*, 333 U.S. 56, 76 n. 8, 68 S.Ct. 401, 411 n. 8, 92 L.Ed. 476 (1948). The policy against rewarding intimidation, noted earlier, may have greater application to civil contempt, and argue for a stricter standard. Yet there surely are *some* defenses to civil contempt, a good example being the excessive burdensomeness of a subpoena. *In re Sealed Case*, 827 F.2d 776, 778 (D.C.Cir. 1987) (per curiam). (For a veritable catalog of defenses to civil contempt see *In re Grand Jury Proceedings*, 486 F.2d 85, 91 (3d Cir.1973).) The witness contempt statute itself, as we have noted, excuses the witness who has "just cause" for disobeying the order to testify, 28 U.S.C. § 1826(a), although the term "just cause" is not defined in the statute and there is no pertinent legislative history.

Duress could well be regarded as a form of excessive burden on a witness ordered to testify, and therefore an apt parallel to the excessive burdensomeness of a subpoena; if so, duress might be a form of just cause. This suggestion derives color from the frequently repeated statement that "punishment may not be imposed in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 1433 n. 9, 99 L.Ed.2d 721 (1988). Not too much should be made of this, however; the quoted passage has reference to the case "where the grand jury [having] been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt." *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966). See also *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983). Duress is analogous; a person who is acting under duress is unable to act freely, to testify, and thus to purge himself of his contempt. But it is only an analogy. *The Eliza Lines*, 199 U.S. 119, 130–31, 26 S.Ct. 8, 10–11, 50 L.Ed. 115 (1905) (Holmes, J.); cf. Perkins & Boyce, Criminal Law 1054–62 (3d ed.1982).

3. We may assume, also without having to decide, that the government is not permitted to force a witness to risk his own life or the lives of his family by testifying if the government can obtain the same evidence from a safer source or wants this witness's testimony not for its evidentiary value but to terrify or endanger him, perhaps because it thinks he has not been punished enough by his criminal sentence. But we do not want to encourage contemnors to believe that it is easy to establish improper governmental purpose; it is not. Institutional purpose is an elusive concept, and contempt proceedings should not be side-tracked into investigations of prosecutorial motive.

4. "The power to punish for contempts is inherent in all courts," *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1874)—but this was said with reference to criminal contempt. Rather than being deemed an inherent power of all courts, civil contempt—an ingenious method of coercion—originated, like so many other devices operating on the person directly rather than on his assets, in equity, as a device for enforcing compliance with equitable decrees. Mascolo, *Procedural Due Process and the Reasonable Doubt Standard of Proof in Civil Contempt Proceedings*, 14 N.Eng.J.Crim. & Civ.Confinement 245, 250 (1988); Goldfarb, The Contempt Power 50 (1963); *Leman v. Krentler–Arnold Hinge Last Co.*, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932); cf. *Louisiana Education Ass'n v. Richland Parish School Board*, 421 F.Supp. 973, 976 (W.D.La.1976), aff'd without opinion, 585 F.2d 518 (5th Cir.1978); *Landman v. Royster*, 354 F.Supp. 1292, 1300 (E.D.Va.1973). It is still an equity procedure, *Jacksonville Paper Co. v. Tobin*, 206 F.2d 333, 335 (5th Cir.1953), and its remedies, such as incarceration, are subject to equitable defenses. *Leman v. Krentler–Arnold Hinge Last Co., supra*, 284 U.S. at 457, 52 S.Ct. at 242; cf. *Spallone v. United States*, —— U.S. ——, ——, 110 S.Ct. 625, 631–32, 107 L.Ed.2d 644, 58 U.S.L.W. 4103, 4106 (U.S. Jan. 10, 1990). So far as the right to a hearing granted by the rules of civil proce-

dure is concerned, genuine issues of material fact concerning remedy have the same status as genuine issues of material fact concerning liability. Even if Dennis Freligh is in contempt of the district court, he is entitled, before being sanctioned, to present to the district judge facts material to the scope and severity of the sanction, just as the defendant in an injunctive proceeding is entitled to a hearing if there are contested issues of material fact bearing on the scope and severity of the injunction, even if he concedes liability. A showing of genuine but unreasonable and perhaps therefore easily dispelled fear might persuade the district judge that incarceration for the statutory maximum was unnecessary to coerce Freligh to testify. Cf. *New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir.1989).

It could be argued that the right to a hearing in a civil contempt case is even broader than we have suggested:

5. The purpose of holding a witness in civil contempt is to elicit testimony. If it is perfectly clear that the witness, for whatever reason, will not testify, there is—or so at least a number of cases have held—no ground for holding him. *In re Crededio*, 759 F.2d 589 (7th Cir.1985); *United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 740 (7th Cir.1985); *In re Grand Jury Proceedings*, 877 F.2d 849, 850 (11th Cir.1989) (per curiam); *Simkin v. United States*, 715 F.2d 34, 37 (2d Cir.1983). When that point is reached, the government's remedy for the witness's contumacy is to proceed against him for criminal contempt.

Can this line of cases survive *Hicks v. Feiock*? The Supreme Court held there that "the critical feature that determines whether the remedy is civil or criminal in nature is ... whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order." 108 S.Ct. at 1431 n. 7. The purpose of the remedy— whether punitive or coercive—does not determine its classification as civil or criminal. *Id.* at 1431. Freligh *can* purge himself of his contempt, by testifying, so Chief Judge Baker's order incarcerating him until he testifies (or until the statute's outer limits on incarceration are reached) is a genuine civil contempt order, rather than a criminal punishment masquerading as civil contempt, even if the truth is that Freligh will not testify, because he is afraid.

But even if certainty that a witness cannot be coerced will not convert civil contempt into criminal contempt, it does not necessarily follow that incarcerating such a witness is a sound exercise of equity powers. The judge who is convinced that the witness will not talk may well decide that it is inequitable to incarcerate him, and that decision would not be an abuse of discretion. We need not decide whether a contrary decision would be an abuse of discretion.

If, moreover, Freligh succeeds in proving duress, this would imply that he can't *really* purge himself of his contempt, in which event, perhaps, he cannot be held in contempt in the first place. Freligh was denied an opportunity to prove duress.

*United States v. Halper*, ⸺ U.S. ⸺, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989), decided after *Hicks v. Feiock*, states in some tension with *Hicks* that in deciding whether a nominally civil penalty really is criminal, "the purposes that the penalty may fairly be said to serve" are an important consideration. From certainty that a witness adjudged in civil contempt will not testify might be inferred a purpose to punish rather than to coerce. But *Halper* was not a contempt case, and however broadly read does not touch the minimum, and it seems to us eminently sound, meaning of *Hicks v. Feiock*. This is that the witness who refuses to answer questions put to him by the grand jury cannot defend against a finding of contempt by presenting evidence, classically self-serving and inherently impossible to weigh, that even though he has no objective basis for refusing to answer the grand jury's questions (duress might be an objective basis), he absolutely will not answer them, even if stretched on the rack. After *Hicks v. Feiock*, this is no longer a litigable issue in a civil contempt proceeding. So we held in

*United States v. Jones*, 880 F.2d 987, 989 (7th Cir.1989), although without purporting to overrule *Crededio* (written by the author of *Jones* ). We need not decide today what if anything of *Crededio* survives *Hicks* and *Jones.*

6. Many courts say that because incarceration is incarceration, due process entitles the witness charged with civil contempt to a full hearing. For a clear statement of this position, see *In re Kitchen*, 706 F.2d 1266, 1272 (2d Cir.1983). Certainly the due process clause is applicable to civil contempt. As the Supreme Court explained in *Shillitani*, "The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury, *provided that the usual due process requirements are met.*" 384 U.S. at 371, 86 S.Ct. at 1536 (citation omitted, emphasis added). Ordinarily, however, the Federal Civil Rules of Procedure provide all the process that is due a civil litigant. We can find no decision that entitles a witness sought to be held in civil contempt to greater rights to a hearing than an ordinary civil litigant has; so the invocation of due process may be superfluous. Many cases, it is true, say that the civil contemnor is entitled to the procedural safeguards to which Rule 42(b) of the Federal Rules of Criminal Procedure entitles the criminal contemnor. E.g., *In re Kitchen, supra*, 706 F.2d at 1271; *In re Rosahn*, 671 F.2d 690, 697 (2d Cir.1982), and *United States v. Hawkins*, 501 F.2d 1029, 1031 (9th Cir.1974) (per curiam). But the only right in Rule 42(b) that is not in the rules of civil procedure is the right to bail, and it is expressly limited by the witness-contempt statute. 28 U.S.C. § 1826(b).

■ The main point of these cases is to remind district judges that, despite the tradition of summary justice in contempt, the civil contemnor is, with the possible exception of contempts committed in the presence of the court, cf. Fed.R.Crim.P. 42(a), entitled to the same rights as other civil litigants, plus the right to bail. Some cases go beyond Rule 42(b) to suggest that the civil contemnor is entitled to counsel and other perquisites of criminal defendants. *In re Rosahn, supra*, 671 F.2d at 697, and cases cited there. Whether this extension is desirable, or if desirable consistent with *Hicks v. Feiock*, is another question we need not decide.

7. The analogy between incarceration as a remedy for civil contempt and incarceration as the normal punishment for crime might be thought to entitle the civil contemnor, like his criminal counterpart, to a right to allocution, that is, a right to throw himself on the judge's mercy before "sentence" is pronounced. Cf. *Groppi v. Leslie*, 404 U.S. 496, 501, 92 S.Ct. 582, 585, 30 L.Ed.2d 632 (1972). It is analogy, not identity, since a judgment of civil contempt does not have the collateral consequences (such as loss of civil rights and enhancement of future criminal punishments) that a criminal conviction has. And while incarceration, even when civil rather than criminal, is a harsh sanction, equitable remedies (of which civil contempt is one) are characteristically harsh, yet no right of allocution is recognized before, say, the hardhearted banker forecloses on the widow's homestead.

■ Whether there is a right of allocution in a civil contempt case is a fascinating question but has few if any consequences. (The question has arisen in only one reported case, and was answered in the negative. *In re Rosahn, supra*, 671 F.2d at 695–96.) The difference between appealing to the district judge's equitable discretion and appealing to some undefined quality of judicial mercy is semantic rather than practical, at least in the setting of a proceeding for civil contempt. Portia's speech ("The quality of mercy is not strained./ It droppeth as the gentle rain from heaven/ Upon the place beneath ...," *The Merchant of Venice*, Act IV, sc. i, ll. 182–203) was cast in terms of mercy but is thought by some scholars to have been influenced by, and perhaps even to have influenced, English equity practice. E.g., Knight, *Equity, "The Merchant of Venice"* and *William Lambarde*, 27 Shakespeare Survey 93 (1974). It is true that the right of allocu-

tion is available in every criminal case, whether or not there are genuine issues of material fact. But in any case of civil contempt in which the contemnor wants to make an issue of the proper sanction and has some grounds for doing so he can ask for a hearing at which to present facts bearing on the trial judge's exercise of his equitable discretion. The judge can combine that hearing with the hearing to determine whether in fact the witness disobeyed a lawful order; there need not be a second hearing, as there must be in a criminal case.

We do not suggest that equitable discretion is unlimited. A modern federal equity judge does not have the limitless discretion of a medieval Lord Chancellor to grant or withhold a remedy. *Whitcomb v. Chavis,* 403 U.S. 124, 161, 91 S.Ct. 1858, 1878, 29 L.Ed.2d 363 (1971); *Okaw Drainage District v. National Distillers & Chemical Corp.,* 882 F.2d 1241, 1245 (7th Cir.1989); *Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 863 (2d Cir.1985), and cases cited there. Modern equity has rules and standards, just like law. *Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 939 (7th Cir.1984) (concurring opinion). And although the ratio of rules to standards is lower in equity than in law, in cases where the plaintiff has an established entitlement to an equitable remedy the judge cannot refuse the remedy because it offends his personal sense of justice. But our concern in this case is with equitable discretion in civil contempt, not the discretion of equity judges in general.

■ The question whether there is a right of allocution in civil contempt is fascinating but we shall defer attempting to answer it until persuaded that it needs to be answered. Freligh is entitled to a hearing to explore the gravity and sincerity of his fears and the measures available to mitigate them. The judgment of contempt is therefore vacated and the case is remanded for further proceedings consistent with this opinion.