902 F.2d 582
 ALTENHEIM GERMAN HOME, an Illinois not-for-profit
corporation, Plaintiff-Appellee,
v.
Bernard J. TURNOCK, as Director of the Illinois Department
of Public Health, and John R. Lumpkin, as
Associate Director, Defendants-Appellants.
 Nos. 89-1840, 89-2505.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 12, 1990.
Decided May 15, 1990.
 
 Nicholas J. Lynn, Robert K. Neiman, Holleb & Coff, Chicago, Ill., for Altenheim German Home.
 Valerie J. Peiler, Deputy Atty. Gen., Neil F. Hartigan, Atty. Gen., Jill Deutsch, Asst. Atty. Gen., Sean Mulroney, Deputy Atty. Gen., Chicago, Ill., for Bernard J. Turnock.
 Before POSNER and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 POSNER, Circuit Judge.
 
 
 1
 The district judge permanently enjoined the Illinois Department of Public Health from depriving the Altenheim German Home, a nursing home, of its unconditional license, on the ground that the Department had denied "The Altenheim" (as it is called) the hearing to which it was entitled by the due process clause of the Fourteenth Amendment. We could reverse with a citation to Somerset House, Inc. v. Turnock, 900 F.2d 1012 (7th Cir.1990), a nearly identical case in which another panel of this court reversed the grant of a preliminary injunction, but since the facts and some of the arguments made by the parties are different we shall soldier on--briefly.
 
 
 2
 On November 28, 1988, after several incidents in which demented residents of the home had wandered off--and this after the Department, pursuant to the Nursing Home Care Reform Act of 1979, Ill.Rev.Stat. ch. 111 1/2, pp 4151-101 et seq., had ordered the Altenheim to equip all the exterior doors of the facility with alarms--the Department sent one of its employees, a registered nurse, to conduct a survey of the alarm situation. The Altenheim had installed an alarm system, yet the nurse found an outside door that was neither alarmed nor monitored, and she was able to go in and out of it three times in a fifteen-minute period without being noticed by anyone on the Altenheim's staff. On the basis of this incident the Department issued a conditional license to the Altenheim (that is, yanked its unconditional license) and also a notice of repeat violation. Ill.Rev.Stat. ch. 111 1/2, pp 4153-304(a)(5), -305(5). The substitution of the conditional for an unconditional license means that if the Altenheim violates any of the remedial measures prescribed by the Department the license will be revoked and the Altenheim will be out of the nursing home business. p 4153-316. It is as if the Altenheim were a convicted criminal on probation, or a criminal defendant released on his own recognizance pending trial. These analogies are reinforced by the fact that the conditional license lasts for at most a year and if at the end of that time the nursing home has corrected the infractions, its unconditional license is restored. Id. The notice of repeat violation is circulated to doctors and reduces the likelihood that they will refer patients to the violator.
 
 
 3
 The Department concedes that these measures, which go beyond the mere disparagement found in cases like Goulding v. Feinglass, 811 F.2d 1099, 1103 (7th Cir.1987), work a sufficient impairment of the Altenheim's property right in its unconditional license (it is a "property right" in the Fourteenth Amendment sense of this much-abused term because the license cannot be revoked without cause, Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir.1983)) to entitle the Altenheim to due process. Id. at 949; Cameo Convalescent Center, Inc. v. Senn, 738 F.2d 836, 843 (7th Cir.1984); Baja Contractors, Inc. v. City of Chicago, 830 F.2d 667, 676-67 (7th Cir.1987); Fleury v. Clayton, 847 F.2d 1229, 1232-33 (7th Cir.1988). We need not decide whether the concession is correct; we need only decide whether there was a denial of due process.
 
 
 4
 The Altenheim complains that it was denied a right to a full evidentiary hearing before the measures constituting the deprivation of its property were put into effect. It is correct that there was no evidentiary hearing in the usual sense. There was instead the following. When the Department's inspector discovers a violation of the safety or health regulations with which a licensed nursing home is required to comply, the inspector on her way out of the facility informs the manager in writing of what she has found and the facility has ten days within which to file written comments with the Department, which then issues a written order. Ill.Rev.Stat. ch. 111 1/2, p 4153-212(c). Afterward the nursing home is entitled to a full evidentiary hearing, pp 4153-301, -303, and -703 to -712, and the Altenheim is pursuing that route. But before, all it is entitled to is a paper hearing. Somerset holds that such a hearing is good enough, but without explicit discussion of the possibility that there might in a particular case be sharply contested issues of fact turning on questions of credibility that could not rationally be answered without live testimony. Perhaps this is such a case, but the Altenheim has made no effort to show that it is, instead arguing that regardless of the circumstances a nursing home is entitled to a full evidentiary hearing, with live witnesses and cross-examination and all the rest of the procedural hoopla treasured by Anglo-American lawyers, before its license is made conditional or a notice of repeat violation is issued.
 
 
 5
 No more than the panel in Somerset do we agree with this extravagant suggestion. The nature and extent of the hearing that due process requires depends on the nature of the issues. Even a person facing the loss of all his property in a civil suit is not entitled to a full evidentiary hearing unless there are genuine issues of material fact. If there are no such issues, all he gets is a paper hearing, just like the Altenheim. Fed.R.Civ.P. 56; In re Grand Jury Proceedings, 894 F.2d 881, 882-83 (7th Cir.1990). We do not know whether there are such issues here because the Altenheim chose not to make the written comments that it filed a part of the record, chose not to introduce into evidence a diagram of its facility, chose not to explain the nature of its alarm and monitoring system, and in short chose not to make the district judge or us privy to the actual particulars of its dispute. It says (but words are cheap) that the door through which the nurse inspector walked unobserved is in the administration wing of the facility, where there are no patients. The Department replies--without contradiction--that the administration wing is connected to other buildings in the complex, in which there are patients, and the patients can enter the administration wing without passing through an alarmed or monitored door and can then scoot out through the door that the inspector entered and left without being observed. The Altenheim does not deny the possibility but says that it is unlikely. A diagram of the facility might have shown whether there is a real dispute over the risk of flight, but as we have said the Altenheim has chosen to challenge the licensing scheme on purer grounds which happen to be untenable. For, to repeat, there is no right to a factual hearing if there are no disputed facts.
 
 
 6
 There is much argument in the briefs about when a state must offer a pre-termination (here, more accurately, pre-sanction) evidentiary hearing. The Altenheim says that the state must always do so unless there is an emergency and that there was none here, as shown by the fact that even though the district judge issued the injunction on March 27, 1989--more than a year ago--the full evidentiary hearing to which the statute entitles the Altenheim after imposition of sanctions has not yet been held. (The Department does not argue that because its sanctions were enjoined, there has never been an imposition and therefore the statutory entitlement has not yet kicked in. Such an argument if accepted would produce complete paralysis.) For all we know, the Illinois Department of Public Health is so understaffed that it takes a year or more to reach hearing even in emergency cases. If so, that would hardly help the Altenheim's argument; it would merely show that pre-termination hearings were infeasible. But all this is beside the point. As the parties have framed the issues, the question is not whether a nursing home is ever entitled to a pre-termination evidentiary hearing as well as to a post-termination one. It is not even how little pre-termination process the Department can get away with offering (perhaps very little) precisely because the Altenheim is entitled to a post-termination hearing. Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); Brock v. Roadway Express, Inc., 481 U.S. 252, 261-62, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987) (plurality opinion); Swank v. Smart, 898 F.2d 1247, 1256 (7th Cir.1990). The question is whether the Altenheim is entitled to a full evidentiary hearing, pre- or for that matter post-termination, whether or not there are genuine issues of material fact. It is not. Civil litigants, at least, have no right of allocution--no right in other words to a hearing unless there are genuine issues of material fact. In re Grand Jury Proceedings, supra, 894 F.2d at 882-83, 886. The summary judgment procedure that Rule 56 of the Federal Rules of Civil Procedure creates is not a denial of due process; nor are its counterparts in the administrative process. To the rule that there is no right to an evidentiary hearing in a civil case unless there are contested factual issues there may be an exception for civil contempt that results in incarceration--we left that issue open in In re Grand Jury Proceedings, supra, 894 F.2d at 886-87. But if there is such an exception it certainly does not extend to a routine administrative proceeding that, at worst, may increase the probability that a licensee will some day lose his license and in the meanwhile may reduce his business somewhat by discouraging referrals. As we said earlier, even if you face ruination in a civil suit, you will have no right to an evidentiary hearing unless there is a genuine issue of material fact.
 
 
 7
 The judgment is reversed with instructions to dissolve the injunction and dismiss the suit.
 
 
 8
 REVERSED WITH DIRECTIONS.