In the Matter of The GRAND JURY
PROCEEDINGS OF
DECEMBER, 1989.

Appeal of Dennis FRELIGH.

No. 90–1847.

United States Court of Appeals,
Seventh Circuit.

Argued May 8, 1990.

Decided June 13, 1990.

Ronald J. Stone, Stratton, Dobbs, Nardulli & Lestikow, Springfield, Ill., for appellant.

Byron G. Cudmore, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, Ill., for appellee.

Before BAUER, Chief Judge,
MANION, Circuit Judge, and
ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Dennis Freligh does not want to testify before the Grand Jury. The government wants his testimony. This is the second appeal stemming from this test of wills. On January 30, 1990, a panel of this court vacated the district court's original order of civil contempt and remanded the cause for a hearing to determine the nature and extent of Freligh's self-professed fear of testifying. Following this hearing, the district court found Freligh's fears to be vague and unsubstantiated and again found him in civil contempt. Freligh appeals. We affirm.

## I.

On April 19, 1988, Dennis Freligh entered a plea of guilty to three drug offenses in the Central District of Illinois. Despite assurances from the district court that his cooperation with the government in further drug investigations would signif-icantly reduce his sentence, Freligh declined to do so and received 10 years imprisonment.

Subsequently, the government called Freligh before the Grand Jury to answer questions about his fellow drug conspirators. When Freligh invoked his Fifth Amendment rights and refused to testify, he was given immunity pursuant to 18 U.S.C. §§ 6002, 6003 and ordered to do so. Still Freligh refused to testify, this time citing his "fear for my life and my kids Lindsay and Adam and my brothers and sisters." Following several more attempts to elicit the witness' testimony, the district court, on September 25, 1989, ultimately entered an order finding Freligh in civil contempt pursuant to the Recalcitrant Witness Statute, 28 U.S.C. § 1826. Judge Baker specifically found that "the fear of retaliation expressed by Dennis Freligh as grounds for non-compliance with the prior order of this court is speculative and unsupported except for the self-serving statements of Dennis Freligh."

On appeal to this court, Freligh maintained that his fear of testifying had not been adequately reviewed by the district court. A panel of this court agreed, stating that a material issue of fact existed regarding the nature of Freligh's fear and that due process required a hearing on this issue. *In re Grand Jury Proceedings (Freligh)*, 894 F.2d 881 (7th Cir.1989) ("*Freligh I*"). The order of contempt was vacated and remanded. We directed the district court to use a new test which we fashioned for purposes of reviewing a witness' alleged fear of testifying:

If a witness can establish that he has not only a genuine but also a reasonable fear of retaliation against himself or his family, he places on the government the burden of either taking reasonable steps to protect him against such retaliation or, at the very least, of explaining why it should not be required to take such steps.

894 F.2d at 883. Thus, this new test mixes a determination of subjective and objective elements in a manner similar to the expectation of privacy test established by *Katz*

*v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

On remand, the district court held the required hearing on the question of Freligh's fears on March 16, 1989. Once again, Freligh refused to take the stand, this time citing his fear that cross-examination by the prosecution might result in another contempt citation. Instead, Freligh submitted two letters to the court explaining his fear for his own safety and that of his family if he were to testify before the Grand Jury.

On March 20, the district court entered a written order once again finding Freligh in civil contempt. The court held that Freligh had satisfied the first, subjective prong of our new test, but had failed the second, objective one. As Judge Baker wrote:

> The two exhibits are not factual statements but deal in conclusions. They express subjective fear by the respondent for his own safety and for the safety of his family members, but those fears are unsubstantiated by any facts from which the court could infer that the fears were reasonable or well grounded. Certainly, there is no statement in these two exhibits which shows a palpable, imminent danger to the respondent.

Freligh was, therefore, ordered held until he chose to testify regarding his knowledge of his co-conspirators' activities or until he would provide more detailed information upon which to determine the reasonableness of his fear. The running of Freligh's underlying 10-year sentence was suspended during this incarceration which was not to exceed 18 months or the term of the Grand Jury, whichever was shorter. Freligh, subsequently filed his second appeal.

## II.

■ On this appeal, Freligh raises three issues. First, he contends that the district court erroneously dismissed his defense of duress; second, that further incarceration has lost its coercive effect; and third, that the government sought only to punish him improperly rather than to encourage him to testify. Despite Freligh's careful delineation of these issues and their separate treatment both in his brief and the government's response, there is only one issue on this appeal: Has Freligh demonstrated that his fear of testifying is genuine and reasonable? Freligh's contentions on appeal are merely extrapolations from this underlying premise. The defense of duress is available only if his fears are subjectively and objectively valid; the incarceration for contempt will likewise become punitive rather than coercive only if his fears actually prevent his testifying and purging of his sentence. Finally, only if these cognizable fears create such a punitive sentence may the government be said to have an improper, malicious purpose in seeking a contempt order against Freligh. Thus, our initial inquiry must be whether Freligh has demonstrated a genuine and reasonable fear.

■ It is a well-settled proposition that the "judiciary possesses the inherent power 'to coerce obedience to its orders by summarily holding a recalcitrant witness—such as an immunized witness who refuses to testify at a grand jury proceeding or at trial—in civil contempt and then imprisoning him until he complies.'" *In re Crededio,* 759 F.2d 589, 590 (7th Cir.1985), quoting *In re Grand Jury Investigation (Braun),* 600 F.2d 420, 422 (3rd Cir.1979). This is a remedy operating on the contemnor directly, in equity, rather than against his or her assets. *See Freligh I,* 894 F.2d at 884. Various equitable and constitutional defenses, including the right to due process, protect the application of this remedy. *See Hicks v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1985). The crucial distinction, however, between civil and criminal contempt orders is that civil contempt lasts for an indeterminate time until the contemnor performs the affirmative act required by the court. *See Hicks,* 485 U.S. at 632, 108 S.Ct. at 1430; *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). Thus, the civil contemnors, unlike their criminal counterparts, "hold the key of their prison in their own pockets." *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902). *See*

*also Crededio,* 759 F.2d at 590; *Braun,* 600 F.2d at 423.

■ Freligh, of course, contends that his fear for himself and his family has robbed him of this key. He cannot purge himself of this sentence because he is no longer acting upon his own volition. After conducting the hearing required upon remand, Judge Baker found that there was no evidence from which to determine that Freligh's fears were reasonable. In reviewing this decision, we may reverse Judge Baker's findings only if they are an abuse of discretion or clearly erroneous. *See John Doe Trader Number One,* 894 F.2d 240 (7th Cir.1990) (reversal of order of civil contempt only for abuse of discretion or clearly erroneous decision); *Stotler v. Able,* 870 F.2d 1158 (7th Cir.1989).

■ At the hearing to determine the nature and extent of his fears, Freligh presented Judge Baker with two letters. He would not testify. He would not respond to questions. Judge Baker could not determine who Freligh feared, what threats existed, where the dangers lay. Instead, Freligh persisted in offering the same vague and unsubstantiated fears that led to his original citation for contempt. There is simply no evidence in these slim documents on which to hang a reasonable fear. Judge Baker did not abuse his discretion in refusing to find Freligh's fears reasonable, nor was this decision clearly erroneous.

In *Freligh I,* we discussed the possibility that duress may in some circumstances serve as an equitable defense to incarceration for civil contempt. 894 F.2d at 884. Such duress, however, must be demonstrated by reference to "palpable imminent danger." As this court has stated, "fear, by itself, will not legally justify or excuse a witness' refusal to testify in violation of a court order." *United States v. Patrick,* 542 F.2d 381, 388 (7th Cir.1976). A recalci-

trant witness must demonstrate that due to this overwhelming sense of immediate danger, he "is unable to act freely, to testify, and thus to purge himself of his contempt." *Freligh I,* 894 F.2d at 884. The witness has not made such a demonstration here. Indeed, not only has Freligh failed to demonstrate a palpable imminent danger, but he has not even demonstrated a reasonable fear. Duress is not a defense under these circumstances.[1]

■ This lack of a reasonable fear also requires dismissal of Freligh's claims of improper government purpose and punitive incarceration. We have recognized that in certain situations, "[w]here incarceration for civil contempt, however, ceases to be coercive and becomes punitive, 'due process considerations oblige a court to release a contemnor from civil contempt.'" *Crededio,* 759 F.2d at 590 (quoting *Simkin v. United States,* 715 F.2d 34, 37 (2nd Cir. 1983)). Of course, no bright line between coercion and punishment exists. Elements of each are present in all civil sentences. *See Hicks v. Feiock,* 485 U.S. 624, 635–36, 108 S.Ct. 1423, 1431–32, 99 L.Ed.2d 721 (1988). Drawing such a line is often a fool's errand. Thus, as we noted in *Crededio,*

> "[i]n the absence of unusual circumstances, a reviewing court should be reluctant to conclude, as a matter of due process, that a civil contempt sanction has lost its coercive impact at some point prior to the eighteen-month period prescribed as a maximum by Congress [in 28 U.S.C. § 1826.]" The district court's conclusion in this regard is "virtually unreviewable."

*Crededio,* 759 F.2d at 591 (quoting *Simkin,* 715 F.2d at 37–38). As we stated in *United States v. Jones,* 880 F.2d 987, 989 (7th Cir.1989), "All recalcitrant witnesses vehemently insist they will never talk. Trying

---

1. At least one circuit has rejected the defense of duress for a civil contemnor altogether. *In re Grand Jury Proceedings (Doe),* 862 F.2d 430 (2nd Cir.1988). "We also reject Doe's claim that the defense of duress is available to a civil contemnor.... That a contemnor believes he or she is under some compulsion not to testify thus

is not a defense to a motion for confinement." The Second Circuit, however, does recognize that a genuine and reasonable fear may at some point render incarceration non-coercive. *Id.* at 432. *See also Simkin v. United States,* 715 F.2d 34, 37 (2nd Cir.1983).

to differentiate among them is a line of inquiry which is speculative at best and time-consuming and pointless at worst." Our exercise with Freligh has proved this rule. After an additional hearing, we have gained no new knowledge and learned nothing that may either assist the prosecution in its investigation or help construct an order of allocution to alleviate Freligh's fears. There is no evidence from which to conclude that Freligh's sentence has lost its coercive value and has become only punishment. The government cannot therefore be said to have an improper motive in seeking an order of contempt.

### III.

The hearing to review Freligh's alleged fear of testifying did not reveal adequate information of a genuine and reasonable fear. The district court did not abuse its discretion in finding that Freligh had not demonstrated a palpable imminent danger, but only vague and unsubstantiated fears. Fear alone will not relieve a contemnor of his burden of testifying. The decision of the district court is, therefore,

AFFIRMED.